Michael BARKHAUSEN, Appellant,

v.

CRAYCOM, INC. d/b/a Crayons to Computers, Anthony Matera, and Sharon Matera, Appellees.

No. 01–04–00486–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 22, 2005.

Craig Welscher, The Welscher Law Firm, Houston, TX, for Appellant.

Scott Rothenberg, Law Offices of Scott Rothenberg, Bellaire, TX, for Appellees.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

JANE BLAND, Justice.

In a dispute over an investment, appellant Michael Barkhausen sued Craycom Incorporated, d/b/a Crayons to Computers, and its president and vice-president, Sharon and Anthony Matera (collectively "Craycom"). After holding a bench trial, granting a new trial, and then holding a second trial, the trial court entered judgment in favor of Craycom and awarded it $30,000 in attorney's fees as a sanction. In this appeal, we decide whether the trial court abused its discretion in (1) denying Barkhausen a jury for the second trial, and (2) awarding fees as a sanction. We conclude it did not as to the former but did as to the latter. We therefore affirm the trial court's judgment on the merits and reverse the sanctions award.

### The Facts

Craycom employed Pamela Barkhausen. In 2000, she entered into an oral agreement to purchase 6.75 shares of Craycom common stock for $27,000. The trial court found that the oral agreement provided that Craycom would issue the stock to Pamela upon her request. Craycom's business records, however, classified Pamela's $27,000 investment as a loan, as opposed to stockholder's equity. Initially, Craycom did not issue any shares of stock, nor did it pay any dividends or profit distributions in connection with the $27,000 contribution. Pamela never requested that it do so.

Pamela and Michael Barkhausen divorced in July 2002. Pursuant to the divorce decree, Michael gained all contractu-

al right, title, and interest to the Craycom investment. Two days after the divorce became final, he sent Craycom a letter demanding payment of $30,337.20, within sixty days, in connection with the $27,000 contribution made to Craycom. In September 2002, Craycom received another letter from Pamela, informing it of the divorce decree and requesting that Craycom issue 6.75 shares of stock to Michael Barkhausen. On October 11, 2002, Craycom tendered the stock to Michael Barkhausen—the same day he filed this lawsuit. The lawsuit alleges that Craycom failed to timely issue him the shares of stock, and asserts claims for: (1) conversion; (2) common law fraud; (3) statutory fraud; (4) rescission and breach of contract; and (5) violations of the Texas Deceptive Trade Practices Act ("DTPA").

### The Procedural History

Six months after Barkhausen filed suit, Craycom moved for summary judgment. The trial court took the summary judgment motion under advisement, but never ruled. Rather, it held a bench trial in July 2003. Both parties presented evidence on the merits of the case, and at the conclusion of the trial, Craycom's attorney testified that Craycom had incurred legal fees totaling $18,500. In August 2003, the trial court signed a judgment in favor of Craycom with respect to Barkhausen's claims for affirmative relief. The court, however, found in favor of Barkhausen with respect to Craycom's DTPA counterclaim for filing a frivolous lawsuit. It nevertheless awarded Craycom $10,000 in attorney's fees in the judgment.

In September 2003, Barkhausen moved for a new trial or to modify the portion of the judgment awarding attorney's fees, in part because nothing in the judgment supported an award of attorney's fees to Craycom. The trial court denied the motion for new trial, but granted the motion to modify the judgment. In October 2003, the trial court amended the judgment by adding findings of fact and conclusions of law. These findings of fact and conclusions of law included findings that Barkhausen had brought his lawsuit in bad faith and to "harass and intimidate the Defendants." The amended judgment included an award for Craycom's attorney's fees pursuant to section 17.50(c) of the DTPA, and purportedly pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.[1] In November 2003, Barkhausen moved for a new trial a second time, or, in the alternative, to amend the judgment, again requesting that the trial court remove the award of attorney's fees from the judgment.

In December 2003, the trial court held an oral hearing attended by both parties. No reporter's record exists of this hearing, but the parties clarified in a later hearing that the trial court offered Craycom an election: it could either agree to a second, two-hour bench trial in January or accept the amended judgment from its first trial and defend it on appeal.[2] Craycom chose a new trial.

Barkhausen's counsel then conferred with Craycom's counsel, requesting that the new trial be held after thirty days, so that he could demand a jury. In response, Craycom's counsel sent a letter to the trial court, requesting that it set the case for

---

1. Chapter 38.001 allows recovery of attorney's fees for some types of successful affirmative claims, but does not provide for the recovery of such fees to a prevailing defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997).

2. Although the record fails to contain a written order granting a new trial, Craycom concedes that the trial court signed a written order granting a new trial.

trial within thirty days, so that Barkhausen would not receive a jury trial; otherwise, his clients would "stand on the judgment as entered by the Court and seek to defend it on appeal." The next day, December 18, Barkhausen filed a written request for a jury trial and paid the jury fee.

In January 2004, Craycom filed a supplemental petition seeking sanctions not to exceed $70,000 pursuant to Texas Rule of Civil Procedure 13, and Chapters 9 and 10 of the Texas Civil Practice and Remedies Code, as well as section 17.50(c) of the DTPA. On January 12, the trial court held a hearing and denied Barkhausen's motion for a jury trial.[3]

The trial court proceeded to hold a second bench trial on the merits. Michael Barkhausen testified that he learned that Craycom was seeking investors when he received a flier his son brought home from day care, informing him of an investment opportunity. Craycom also provided proposed budgets and financial projections for the company. The Barkhausens borrowed the money to make the Craycom investment and tendered it to the Materas. Michael Barkhausen signed the loan documents, but the stock purchase agreement was never signed, and Pamela Barkhausen alone negotiated the oral transaction with the Materas. Anthony Matera admitted that the stock purchase agreement in this case was "strictly oral."

Michael Barkhausen further testified that he understood that the Barkhausens would receive stock dividends or payments from Craycom in order to "offset the amount of the loans that we took out for investment and that was suppose [sic] to start in January of 2001." Craycom concedes that Barkhausen did not receive any stock certificates until October 2002, the day suit was filed, and that Barkhausen did not receive a financial return on his investment. Further, Craycom did not proffer any financial information to the Barkhausens during 2001 or 2002, or in response to Michael Barkhausen's DTPA demand.

Barkhausen concedes that he was not the sole owner of the stock in the company until his divorce, but he testified that his former wife negotiated with Craycom on his behalf. He further testified that he suffered adverse taxation consequences during his marriage because Craycom characterized the stock purchase as a loan on its books, not an equity investment, and failed to issue any documentation for the loan to the Barkhausens. In support of his claim, he introduced Craycom's tax returns that reflect the Materas' ownership of Craycom, but not the Barkhausens' equity interest. Moreover, Janet Latshaw, a Craycom employee, testified that Craycom booked the purchase as a loan, pursuant to the Materas' instructions.

Barkhausen contacted Anthony Matera in July 2002 and indicated that he wanted either a return of his investment or issuance of the stock certificates. Anthony told him that he was not going to return Barkhausen's investment, nor would he issue the stock without going to court. In compliance with the DTPA, Barkhausen sent Craycom a demand letter, in August, asking it to respond within sixty days. *See* Tex. Bus. & Com.Code Ann. § 17.505(a)(Vernon 2002). After no response, Barkhausen filed this suit, alleging that Craycom wrongfully accepted and deposited the $27,000 without treating his former wife and him as shareholders or issuing them any stock.

Sharon Matera testified that Pamela Barkhausen was never a "stockholder," and that she and Anthony had discussed

---

3. The trial court signed an order reflecting the denial of the jury demand on January 23.

with the accountant "what was to be done and she made it sound like it was a normal thing to hold money until the stocks were issued." Sharon Matera further testified that she dealt only with Pamela Barkhausen, who was a Craycom employee. Anthony testified that Pamela sent Craycom a letter that instructed it to issue her stock in Michael Barkhausen's name as a result of the divorce decree. Pamela testified that neither she nor Craycom wished to deal with Barkhausen until the divorce was finalized. She further testified that she and Craycom discussed issuing a promissory note, but decided not to do so or to issue any stock until after the divorce was finalized. Pamela stated that she was satisfied with Craycom's disclosures and representations and that she never provided Craycom instructions regarding the stock issuance.

Craycom also presented testimony, including that of Mark Knop, its former trial counsel, who stated that he had completed 124 hours of legal services at the rate of $175 per hour. Craycom's new counsel, Scott Rothenberg, attempted to call himself as a witness. Barkhausen objected on the ground that Craycom had not designated Rothenberg as an expert witness. The following exchange occurred:

> [Craycom's Counsel]: Judge, we're not asking for legal fees as damages. We are asking for legal fees in the nature and sense of Rule 13 or Chapter 9 and 10[sic] or Section 17.50 sanctions. Those are family [sic] matters for the Court that are not considered by the fact finder per se because the fact finder is the Court in this case, I was merely offering it during the course of this trial to expedite matters. If the Court would like to make a ruling on whether or not this matter was groundless and brought in bad faith and brought for the purpose of harassment and then convene a hearing for the purposes of a fair sanction

under the circumstances, we certainly have no problem with that.

> [The Court]: The objection at this time is sustained.

Thus, the court heard no evidence on sanctions "during the course of this trial to expedite matters." After the trial concluded, the trial court took the case under advisement.

On January 23, the trial court signed a second amended judgment, together with findings of fact and conclusions of law, in favor of Craycom. Without holding any further hearing, the court awarded Craycom $30,000 in attorney's fees as a sanction, plus additional fees for any appeal. Barkhausen moved for the trial court to reconsider the sanctions award, and, in the alternative, requested a new trial, both of which the trial court denied. This appeal followed.

### Request for a Jury Trial

■ Barkhausen contends the trial court erred in denying his request for a jury trial. Craycom responds that Barkhausen failed to timely file and pay the fee for his request for a jury trial; thus, the trial court did not abuse its discretion in denying Barkhausen's jury demand.

We review a trial court's refusal to grant a jury trial under an abuse of discretion standard. *Mercedes–Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex.1996) (*citing State v. Wood Oil Distrib. Inc.*, 751 S.W.2d 863, 865 (Tex.1988)). We examine the entire record and find that an abuse of discretion exists if the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id. (citing Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987)); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

We recognize that "[t]he right to a jury trial is one of our most precious rights, holding 'a sacred place in English and American history.'" *Gen. Motors Corp. v. Gayle,* 951 S.W.2d 469, 476 (Tex.1997) (*quoting White v. White,* 108 Tex. 570, 196 S.W. 508, 512 (1917)). A request for a jury trial nonetheless must be filed "a reasonable time before the date set for trial of the cause of the non-jury docket, but not less than thirty days in advance." TEX.R. CIV. P. 216(a). Even if a party fails to timely pay the jury fee, however, Texas courts have held that a trial court "should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party." *Gayle,* 951 S.W.2d at 476 (*citing Dawson v. Jarvis,* 627 S.W.2d 444, 446–47 (Tex.App.-Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Childs v. Reunion Bank,* 587 S.W.2d 466, 471 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.); *Aronoff v. Tex. Turnpike Auth.,* 299 S.W.2d 342, 344 (Tex. Civ.App.-Dallas 1957, no writ); *Erback v. Donald,* 170 S.W.2d 289, 294 (Tex.Civ. App.-Fort Worth 1943, writ ref'd w.o.m.)).

Here, we cannot conclude that the trial court abused its discretion in denying Barkhausen's jury demand. First, Barkhausen did not request a jury in his first trial. He chose to request a jury for his new trial, presumably because the trial court had ruled against him in the first trial. Yet, unlike the party denied a jury in *Gayle,* Barkhausen never moved, either formally or informally, for a continuance of the second trial that could have allowed the jury demand to become timely. *Cf. Gayle,* 951 S.W.2d at 477 (holding that trial court abused its discretion in refusing to grant continuance to allow appellant's jury request and fee to become timely when trial judge timed trial proceedings to avoid Rule 216, appellant established that

jury trial demand would not cause adverse party injury or delay, and trial court conceded case was not ready for trial due to outstanding discovery issues). Second, the trial court articulated its reasons for denying Barkhausen's jury demand. The trial judge stated he refused the request due to his concerns regarding the extra expense that both parties would incur and the length of the trial. Concomitantly, Barkhausen made no showing or argument that a jury trial based on an untimely demand would not prejudice the opposing party, and he did not suggest that the trial judge's concerns could be alleviated. In *Gayle,* the discovery in the case had not concluded. *See id.* Here, in contrast, pretrial work on the case was complete and the case was trial-ready.

In his briefing to this court, Barkhausen relies on *Bell Helicopter Textron, Inc. v. Abbott,* 863 S.W.2d 139 (Tex.App.-Texarkana 1993, writ denied). In *Bell Helicopter,* the Texarkana Court of Appeals held that the trial court's failure to provide proper notice of the first trial setting under Rule 245 made the defendant's compliance with Rule 216 impossible. *Id.* at 141. As a result, the court held that the trial court's refusal to grant Bell a jury trial constituted error. *Id.* In contrast, Barkhausen does not complain that the trial court's notice of the second setting was improper, nor was it under Rule 245, which applies to initial trial settings. Under these facts, we hold that the trial court did not abuse its discretion in denying Barkhausen's request for a jury trial.

## The Sanction Award

Barkhausen contends the trial court erred in awarding Craycom $30,000 as a sanction, plus fees for the subsequent appeal.[4] Specifically, he complains: (1) the

---

**4.** The trial court awarded Craycom $30,000   in attorney's fees at the trial court level,

trial court failed to hold a sanctions hearing; (2) the sanctions order fails to identify the particular conduct justifying sanctions; (3) Craycom failed to introduce any evidence that Barkhausen's acts "amounted to a conscious doing of a wrong for dishonest, discriminatory, or malicious purpose," (4) sufficient evidence exists to counter the sanctions award; and (5) the sanctions award is excessive, given the evidence in the record.

The trial court's judgment awards sanctions against Barkhausen under Chapters 9 and 10 of the Civil Practice and Remedies Code, Texas Rule of Civil Procedure 13, section 17.50(c) of the DTPA, and the court's inherent power. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 9.011–.012, 10.001, 10.002(c) (Vernon 2002); TEX.R. CIV. P. 13; TEX. BUS. & COM.CODE ANN. § 17.50(c) (Vernon 2002).[5]

*Civil Practice and Remedies Code Chapter 10*

■ We review a trial court's imposition of Chapter 10 sanctions for an abuse of discretion. *See Finlay v. Olive,* 77 S.W.3d 520, 524 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (*citing Downer,* 701 S.W.2d at 241–42).

Chapter 10 provides that the signing of a pleading or motion constitutes a certificate by the signatory that, to the best of the signatory's knowledge, "the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;" TEX. CIV.

PRAC. & REM.CODE ANN. § 10.001(1), and "each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* § 10.001(2). The court may award reasonable expenses and attorney's fees incurred in presenting or opposing a motion brought under Chapter 10, and if no due diligence is shown, may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses caused by the litigation. *Id.* § 10.002(c). Chapter 10 requires the court to provide a party subject to sanctions notice and a reasonable opportunity to respond to the allegations. *Id.* § 10.003. In imposing sanctions under Chapter 10, a trial court is required to specifically detail the sanctionable conduct in its order. *Id.* § 10.005 ("A court shall describe in an order imposing a sanction under this chapter the conduct the court has determined violated Section 10.001 and explain the basis for the sanction imposed."); *Rudisell,* 89 S.W.3d at 238 ("The use of 'shall' in the statute indicates that the requirement for particularity in the sanction order is mandatory."). Here, the trial court incorporated the sanctions award into the final judgment. The final order does not set forth Barkhausen's particular conduct that justifies sanctions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 10.005.

---

$12,500 if Barkhausen appealed to this Court, $3,750 if he filed a petition for review with the Texas Supreme Court, and an additional $3,750 if the Texas Supreme Court granted his petition for review.

5. Chapter 9, however, is not applicable to cases in which Chapter 10, Rule 13, or the DTPA applies. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 9.004, 9.012(h) (stating that this chapter does not apply to the DTPA or any pro-

ceeding to which Section 10.004 or Texas Rule of Civil Procedure 13 applies). We therefore need not consider whether the trial court abused its discretion in awarding sanctions pursuant to Chapter 9 of the Civil Practice and Remedies Code. Moreover, Craycom presents no argument on appeal that the sanctions award is a justified exercise of the trial court's inherent power.

In the absence of particularity in the sanctions order, some courts rely on the trial court's findings of fact and conclusions of law that describe and explain the sanctionable conduct. *See, e.g., University of Texas at Arlington v. Bishop,* 997 S.W.2d 350, 356 (concluding findings and conclusions supplied particulars lacking in sanctions order based on Chapter 10, and thus trial court's failure to identify sanctioned conduct with specificity in order did not affect sanctioned party's substantial rights or hinder its presentation of appeal); *Gorman v. Gorman,* 966 S.W.2d 858, 867–68 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (op. on reh'g) (findings of fact supplied particularities in sanctions order based on Rule 13). Here, the findings of fact and conclusions of law provide that (1) Barkhausen's lawsuit was not warranted by a good faith argument for the extension, modification, or reversal of existing law; (2) Barkhausen brought this lawsuit for the purpose of harassing and intimidating Craycom so that it would agree to rescind the agreement and deliver to him the $27,000 consideration given to Craycom by Barkhausen's former wife; and (3) Barkhausen was not entitled to recover under any claim or cause of action asserted, and based upon the facts known to him or which should have been known to him at the time he filed his lawsuit, he knew or should have known that he had no good faith basis to assert that he had any right to recover under any claim or cause of action asserted.

The trial court did not hold a separate sanctions hearing, and Craycom—though it defended the claims against it—did not produce affirmative evidence of sanctionable conduct at either of the bench trials. With the exception of the second finding, these "findings of fact" are recitations of the legal standard for finding sanctionable conduct, but they do not particularize the offensive conduct. We thus examine the evidence in the record to support the mixed finding and conclusion that Barkhausen brought this suit to harass or intimidate Craycom, and by extension, the trial court's other two conclusions.

With respect to the second finding, the trial court did not articulate specific facts demonstrating that the lawsuit was part of a pattern of harassment or intimidation, and Craycom presented no argument to the trial court setting forth an evidentiary basis for it from the evidence presented at the trial on the merits. Nor did the trial court hear evidence about Barkhausen's lack of a good faith basis for filing the lawsuit, at the time it was filed, based upon what he should have known, to support the trial court's general findings. While the trial court found that Craycom issued shares to Barkhausen on the date suit was filed, Craycom failed to show that this, in and of itself, rendered the lawsuit frivolous. Finally, with respect to the first finding, Craycom has set forth reasons on appeal as to why the suit is a frivolous one, but it never presented those to the trial court as a basis for awarding sanctions. In fact, at the close of the evidence, Craycom's counsel contemplated that the trial court would convene a later hearing on the sanctions matter. Craycom's attorney testified as to the fees he incurred, but the trial court did not hear testimony regarding the underlying facts that Craycom relied upon to justify sanctions under Chapter 10.

Absent an affirmative showing in the trial record, we conclude that the trial court abused its discretion in failing to particularize the conduct it found warranted sanctions. *Finlay,* 77 S.W.3d at 525.

*Texas Rule of Civil Procedure 13*

█ We review a trial court's Rule 13 sanction award under an abuse of discretion. *Downer,* 701 S.W.2d 238, 241–42; *Gaspard v. Beadle,* 36 S.W.3d 229, 239

(Tex.App.-Houston [1st Dist.] 2001, pet. denied). We examine the entire record and will overturn a trial court's discretionary ruling if it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Mercedes–Benz Credit Corp.*, 925 S.W.2d at 666; *Downer*, 701 S.W.2d at 241–42;. Courts must presume that pleadings are filed in good faith. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex.1993) (orig.proceeding). The party seeking the sanctions bears the burden of overcoming the presumption of good faith in the filing of pleadings. *Id.*

█ Rule of Civil Procedure 13 provides for sanctions if a party files a groundless pleading brought in bad faith or for harassment. Tex.R. Civ. P. 13. If a pleading is filed in violation of Rule 13, "the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215.2(b), upon the person who signed it, a represented party, or both." *Id.* For the purposes of a Rule 13 violation, groundless "means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* No sanctions may be imposed under Rule 13 "except for good cause, the particulars of which must be stated in the sanctions order." *Id.*

In evaluating an allegation of a Rule 13 violation, "[c]ourts shall presume that pleadings, motions, and other papers are filed in good faith." Tex.R. Civ. P. 13. "Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the alleged groundless petition." *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 757

(Tex.App.-Dallas 1993, no writ). "A trial court's failure to specify the good cause for sanctions in a sanction order may be an abuse of discretion." *Gaspard*, 36 S.W.3d at 239.

Here, the trial court included its sanctions order in the final judgment, but did not list the good cause particulars. A failure to make particular findings may be harmless error, if the trial court's findings of fact and conclusions of law "supply the particulars of the good cause required by Rule 13." *See Gaspard*, 36 S.W.3d at 239 (citing *Bradt v. Sebek*, 14 S.W.3d 756, 769–70 (Tex.App.-Houston [1st Dist.] 2000, pet. denied)); *see also Gorman*, 966 S.W.2d at 867–68 (findings of fact supplied particularities in sanctions order based on Rule 13).

As discussed above, however, the trial court's findings of fact and conclusions of law in this case do not provide the particular conduct that warranted Rule 13 sanctions. Although the trial court found that Barkhausen brought this lawsuit in bad faith and for harassment, no evidence in the record supports the trial court's findings. Although Craycom put forth evidence that Barkhausen's claims lacked merit, it made no affirmative showing that these non-meritorious claims were also frivolous. The trial court also had no evidence on the record before it to determine that Barkhausen filed his petition in bad faith or to harass Craycom. Rather, the record shows a legitimate disagreement about an investment, the accounting for it, and the disputed returns on it. The trial court's general findings in this case are insufficient to satisfy Rule 13's particularity requirements. *Tarrant County v. Chancey*, 942 S.W.2d 151, 155 (Tex.App.-Fort Worth 1997, no pet.).[6] As required

---

**6.** We note that Barkhausen alerted the trial court that the sanctions order failed to meet

the particularity requirements. *Cf. Spiller v. Spiller*, 21 S.W.3d 451, 456 (Tex.App.-San An-

by Rule 13, it was Craycom's burden to prove conduct warranting sanctions. We therefore conclude that the trial court abused its discretion in awarding attorney's fees under Rule 13.

### DTPA Section 17.50(c)

Section 17.50(c) of the DTPA provides that "[o]n a finding by the court that an action brought under this section was groundless in fact or brought in bad faith, or brought for the purposes of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs." TEX. BUS. & COM.CODE ANN. § 17.50(c). The Texas Supreme Court has provided that "groundlessness" under the DTPA has the same meaning as "groundlessness" under Texas Rule of Civil Procedure 13—a claim having no basis in law or fact, and not warranted by any good faith argument for extension, modification, or reversal of existing law. *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex.1989); *Ostrow v. United Bus. Machs., Inc.*, 982 S.W.2d 101, 106 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *see also Schlager v. Clements*, 939 S.W.2d 183, 190 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

■ In determining groundlessness under the DTPA, we review all of the tendered evidence to determine if an arguable basis in fact and law for the consumer's claim exists. *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex.1989); *see also Schlager*, 939 S.W.2d at 190. A claimant brings a suit in "bad faith" if he is "motivated by malicious or discriminatory purpose." *Schlager*, 939 S.W.2d at 190. The trial court determines whether a suit is groundless or brought in bad faith as a matter of law. *Donwerth*, 775 S.W.2d at 637.

We review the trial court's award of attorney's fees under section 17.50(c) as a question of law, under an abuse of discretion standard. *Id.* at 637 n. 3; *see also Schlager*, 939 S.W.2d at 190; *Ostrow*, 982 S.W.2d at 106. Under such a standard, we may not substitute our judgment for that of the trial court. *Schlager*, 939 S.W.2d at 191. A trial court abuses its discretion if it acts arbitrarily and unreasonably, without reference to guiding rules or principles. *Downer*, 701 S.W.2d at 241–42; *see also Ostrow*, 982 S.W.2d at 106.

■ Barkhausen first asserts that we should reverse the section 17.50(c) sanctions award because he did not receive notice of Craycom's complaints, nor an opportunity to be heard regarding the alleged sanctionable conduct. The due process clause of the United States Constitution limits a court's sanctioning power. *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (orig.proceeding); *see also Davila v. World Car Five Star*, 75 S.W.3d 537, 542– 43 (Tex.App.-San Antonio 2002, no pet.). Accordingly, sanctions proceedings must afford a party notice and an opportunity to be heard. *Davila*, 75 S.W.3d at 543. Here, Craycom's amended pleadings expressly asserted a counterclaim seeking attorney's fees for sanctions before the second trial. The amended pleadings, however, did not particularize the grounds supporting an award of attorney's fees, but merely quoted the statutory language. Barkhausen received notice of Craycom's counterclaim for attorney's fees under section 17.50(c) of the DTPA, but the pleadings do not tell of the basis on which the trial court may have relied to impose sanctions.

tonio 2000, no pet.) (holding that court will not consider order that failed to include findings required by Rule 13 and Chapter 10 as

basis for reversal because party did not alert trial court of error).

■ Barkhausen further contends that the trial court's order fails to state the particular conduct that justifies sanctions. Unlike Chapter 10 and Rule 13, section 17.50(c) does not require that the sanctions order particularly describe the conduct that justifies sanctions, but the trial court's failure to include specific findings creates difficulty in determining the basis for its sanctions award. For example, on appeal, Craycom contends that Barkhausen was not a consumer with respect to the disputed investment, and this is a basis to find the DTPA suit frivolous. Yet, the trial court's final judgment does not find that Barkhausen lacked consumer status, even with regard to the merits of the underlying suit. Moreover, lack of consumer status under the DTPA was not raised as an issue, either in Craycom's motion for summary judgment, or by counsel at trial.

Our review of the record leads us to conclude that Barkhausen pleaded an arguable suit against Craycom. Craycom failed to present any evidence at trial to support its contention that Barkhausen brought this lawsuit in bad faith motivated by a malicious or discriminatory purpose or for harassment purposes. Nor does evidence exist in the record to show that this lawsuit lacked any arguable basis in fact or law, and the trial court's order does not state with particularity any evidence supporting its finding of frivolousness under the DTPA. Moreover, Craycom did not notify the trial court or opposing counsel as to the element or elements of the DTPA so lacking in merit as to constitute frivolousness. Instead, as it did in its summary judgment motion, at trial Craycom defended the DTPA claims against it generally. Craycom's position was that it did not misrepresent anything to Pamela

Barkhausen, and that it "complied in all manners and to all agreements" in which they entered, "[and] violated no common law or statutory principle" with regard to the investment. The trial court agreed, but these are issues about which the witnesses and the documentary evidence clashed at trial. Craycom did not undertake the further showing that Barkhausen's claims were so devoid of merit as to be frivolous. We conclude that, absent specific pleadings, argument, evidence, or trial court findings, the record cannot support the trial court's award of sanctions under the DTPA. We therefore hold that the trial court should not have imposed sanctions under the DTPA.[7]

**Conclusion**

We conclude that, under these circumstances, the trial court did not abuse its discretion in refusing Barkhausen's request for a jury trial. We further conclude that the trial court abused it discretion in awarding Craycom $30,000 in sanctions because the trial court did not particularize the conduct justifying sanctions, and the evidence in the record does not support the imposition of sanctions. We therefore modify the judgment to delete the sanctions award, and affirm the judgment of the trial court as modified.

---

**7.** We do not address Barkhausen's contention that the sanctions award is excessive, as we have reversed it on other grounds.