

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERT JOSEPH GAUDET, JR., | § | No. 08-23-00075-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 243rd Judicial District Court |
| ICON CUSTOM HOME BUILDER, LLC and JUANA GARCIA, | § | of El Paso County, Texas |
| | § | (TC# 2020DCV3607) |
| Appellees/Cross-Appellants. | § | |

## **MEMORANDUM OPINION**

Appellant/Cross-Appellee Robert Joseph Gaudet, Jr. appeals from the trial court's judgment to the limited extent the court ordered that Appellees/Cross-Appellants Icon Custom Home Builder, LLC and Juana Garcia (collectively, ICON) recover a judgment against him. The trial court found Gaudet brought groundless claims under the Deceptive Trade Practices Act (DTPA), but it further determined they were not brought in fad faith nor for purposes of harassment. *See* Tex. Bus. & Com. Code Ann. §§ 17.41–.63. In its cross-appeal, ICON challenges the judgment to the extent the court found Gaudet's claims were not brought in bad faith. Because we conclude that Gaudet's claims were neither groundless in law or fact, nor brought in bad faith, we reverse the trial court's judgment to the extent it ordered that ICON recover judgment against

Gaudet. We otherwise affirm the judgment to the extent it ordered that Gaudet take nothing from ICON.

## I. BACKGROUND

Because the appeal centers on the trial court's findings of groundlessness, we briefly summarize the facts and circumstances leading up to Gaudet's filing of several DTPA claims.

Gaudet and his wife sought to purchase a home in the El Paso area. Soon, they began negotiating with ICON, a company selling lots and advertising services as a home builder. Gaudet mostly spoke with Garcia, an ICON owner, as he pursued a contract to buy a lot and build a home. Gaudet and ICON discussed two different lots—one in the Franklin Hills subdivision and the other in the Cimarron Canyon subdivision—along with three different home designs with differing base prices.

Gaudet eventually deposited $500 with ICON to reserve the Franklin Hills lot. The receipt he received included language that it only covered preliminary schemes and deposit funds would not be refunded if the parties failed to agree on a purchase price. Over the next couple of months, Gaudet and ICON communicated back and forth concerning Gaudet's requested specifications for his chosen design and budget. Changing his choice of lots, Gaudet transferred the $500 deposit to the Cimarron Canyon lot and signed a new deposit receipt. Thereafter, Gaudet and ICON continued to exchange emails concerning his design choices and price estimates.

Ultimately, ICON sent Gaudet a design plan containing upgrades and modifications as he requested. ICON informed him the plan would cost about $384,000 for 2,547 square feet of living area. But ICON also stated the plan it sent included a quoted price of $394,600 if the higher end design choices were made and certain elevations were incorporated into the overall design.

2

Additionally, ICON offered to refund Gaudet his $500 deposit if Gaudet chose not to move forward with a plan.

In response, Gaudet sent a letter to Garcia via email (the DTPA letter) alleging ICON had violated provisions of the DTPA by "raising prices" through a "bait and switch strategy." Gaudet claimed the design he was sent needed changes because it did not comport with his understanding of their discussions. He also claimed the most recent price quoted had increased by $46,710 as compared to quotes he received months prior. Gaudet further stated: "Please let us know no later than 5:00 pm on Wednesday, January 22 if you will sell the Trevetino design at the price quoted to us on October 20 and November 9, 2018." The email further detailed the design specifications and modifications he required to purchase a home built by ICON on the Cimarron Canyon lot at a price of $365,000. ICON responded to the letter by refusing Gaudet's demand, by notifying him that a bait and switch scheme required an advertisement to the public, and by offering him a settlement of $2,300 to cover his deposit of $500 and other costs he had claimed he had incurred throughout their course of negotiating. Gaudet did not respond to ICON's letter. For over a year, ICON held on to the Cimarron Canyon lot. Eventually, it entered into a contract with another buyer. In May 2019, Gaudet and his wife purchased another property through another builder.

On November 9, 2020, Gaudet filed suit against ICON alleging claims for breach of contract, common law fraud, statutory fraud, and violations of the DTPA.[1] Only Gaudet's claims under the DTPA are relevant to this appeal. Gaudet alleged that he relied on Garcia's verbal estimate that it would cost $360,000 to build the Tiverton Model home with some modifications on the Cimarron Canyon lot. He claimed that ICON engaged in a bait and switch scheme by

---

[1] Along with filing suit, Gaudet also filed a notice of lis pendens on the lot at issue. Appellees moved for an expungement of the lis pendens, asserting it interfered with a real estate transaction with a third party such that it held up a closing on the property. On April 1, 2021, the trial court held a hearing on whether to expunge the lis pendens. The trial court granted an order expunging the lis pendens. Gaudet sought mandamus review which this Court denied. *In re Gaudet*, 625 S.W.3d 887, 891 (Tex. App.—El Paso 2021, no pet.).

3

offering to sell lots for one price and subsequently raising the prices after he paid the builder's deposit. Gaudet also alleged ICON took advantage of his lack of experience in real estate and construction by quoting prices to him which omitted additional required costs known to ICON at the time of the original quote. Gaudet claimed damages for the lost value of the home, funds Gaudet spent on a drone to photograph the lots for planning purposes, surveying costs, architectural consultant fees, and mental anguish. He also requested specific performance requiring ICON to build the house with all requested features for the quoted price.

ICON filed an answer asserting verified denials and affirmative defenses, including limitations. ICON included a counterclaim for attorney's fees pursuant to § 17.50(c) of the DTPA, asserting Gaudet's suit was groundless and brought in bad faith. ICON thereafter filed a traditional motion for partial summary judgment asserting they were entitled to summary judgment on Gaudet's claims for breach of contract, common law fraud, fraud in real estate, and violations of the DTPA. The trial court granted ICON's motion and ordered that Gaudet take nothing on all claims. The trial court also determined that ICON's claim against Gaudet for attorney's fees and costs needed to be decided pursuant to a bifurcated proceeding since Gaudet had filed a request for a jury trial and paid the requisite fee.

Next, as a bench trial, the court heard ICON's counterclaim for the purpose of determining whether Gaudet's claims were groundless in law or fact, filed for the purpose of harassment, or filed in bad faith. The trial court issued an order concluding each of Gaudet's claims brought under the DTPA were groundless but finding they were not brought in bad faith or for purposes of harassment. The trial court then allowed the case to proceed to a jury trial to determine reasonable and necessary attorney's fees, if any.

After a one day jury trial, the jury returned a verdict in favor of ICON, awarding reasonable and necessary attorney's fees in the amount of (1) $213,072.94 for representation through trial and

4

completion of trial court proceedings, (2) $54,000 for representation through an appeal to the Court of Appeals, (3) $5,400 for representation at the petition for review stage in the Texas Supreme Court, (4) $27,000 for representation at the merits briefing stage in the Texas Supreme Court, and (5) $12,960 for representation through oral argument and the completion of proceedings in the Texas Supreme Court.

The trial court entered a final judgment rendering a take nothing judgment against Gaudet on all his claims and awarding attorney's fees in accordance with the jury's verdict. Gaudet requested findings of fact and conclusions of law, which the trial court ultimately entered. Gaudet also filed a motion for new trial, which was overruled by operation of law. Gaudet appealed, and ICON filed a cross appeal.

## II. ISSUES ON APPEAL

Gaudet presents four issues on appeal, while ICON cross-appeals on a single issue. In his first three issues, Gaudet challenges the supporting grounds for ICON's recovery of attorney's fees against him under the DTPA. His fourth and final issue claims the evidence in support of the amount of attorney's fees awarded to ICON was legally and factually insufficient. ICON's cross-appeal asserts the trial court erred in finding that Gaudet's DTPA claims were not filed in bad faith.

Because Gaudet's second issue is dispositive of his appeal, we begin with that issue and follow with ICON's cross-appeal.[2]

---

[2] In Gaudet's first issue, he challenges the legal and factual sufficiency of three specific findings of fact made by the trial court. The three findings all have to do with the merits of Gaudet's claims. For this reason, we conclude the resolution of Gaudet's first issue would not affect the analysis of groundlessness and need not address it.

5

# III.  GROUNDLESS CLAIMS

In his second issue, Gaudet claims the trial court erred in holding that his DTPA claims were groundless. He urges that all his claims were based on the foundation of a "consumer transaction," as contemplated by the statutory protections of the DTPA. Even though his DTPA claims were resolved in favor of ICON on its motion for summary judgment, he contends nonetheless that more than sufficient evidence demonstrated he brought his action in good-faith.

## A.  Standard of review and applicable law

If a trial court finds a DTPA claim was groundless in fact or law, brought in bad faith, or brought for the purpose of harassment, it must award reasonable and necessary attorney's fees and costs. Tex. Bus. & Com. Code Ann. § 17.50(c). The appellate review of a trial court's groundlessness determination "is a question of law under an abuse of discretion standard." *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 n.3 (Tex. 1989); *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 674 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Accordingly, we will reverse the determination only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam).

For the determination of groundlessness under the DTPA, the proper test is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989). "'Groundless' under the DTPA has the same meaning as 'groundless' under Rule 13 of the Texas Rules of Civil Procedure." *Donwerth*, 775 S.W.2d at 637. In either context, a "groundless" claim is one that has "[n]o basis in law or fact and [it is] not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* However, a groundless finding under the DTPA is not synonymous

6

with a "no evidence" finding. *Id.* "To equate groundlessness with no evidence would preclude the award of attorneys' fees in obviously fraudulent or malicious actions when some evidence was presented, yet discourage legitimately wronged consumers from seeking the protections afforded by the Act for fear of failure in court." *Id.* Accordingly, in determining whether an arguable basis exists for the suit, a court may consider "evidence that is legally inadmissible or subject to other defects . . . provided there is some good faith basis for belief that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence." *Id.* Said differently, "[g]roundlessness is more than an ultimate determination that the claim is not a winner." *Drummond*, 508 S.W.3d at 674; *see also Wenger v. Flinn*, 648 S.W.3d 448, 455 (Tex. App.—San Antonio 2021, no pet.) (stating a pleading is not groundless merely because it does not succeed, lacks legal merit, or because a court ultimately disagrees with the factual and legal assertions).

To establish Gaudet's claims were groundless, ICON carried a burden to show they were brought without a basis in law or fact and were not warranted by good-faith argument for the extension, modification, or reversal of existing law. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (citing Tex. R. Civ. P. 13); *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 184 (Tex. App.—Texarkana 2011, no pet.).

### B. Analysis

ICON asserted that Gaudet's various claims were groundless because they were all precluded by controlling authority interpreting the DTPA, precluded by the plain language of the statute, and otherwise barred by limitations.

### 1. Gaudet's claims brought under § 17.46(b)(9)

First, ICON asserted Gaudet's claims of a "bait and switch" scheme under the DTPA were groundless because they were precluded by controlling authority from the Texas Supreme Court.

7

Specifically, ICON contends the claim brought under § 17.46(b)(9) prohibits the advertising of goods or services with intent not to sell them as advertised. Citing to *Smith v. Baldwin*, 611 S.W.2d 611, 614 (Tex. 1980), ICON points out that the Texas Supreme Court has prohibited claims asserting a bait and switch scheme unless the claim is based on public advertisements. In *Baldwin*, a prospective homeowner sued a contractor alleging it violated the DTPA by misrepresenting to him that the house being purchased would meet the requirements for a final Veteran Administration inspection compliance report. *Id.* The Supreme Court held that plaintiff's alleged violations of § 17.46(b)(9) failed because there was nothing in the record to support that the contractor's "representations involved advertising, much less 'bait advertising.'" *Id.* at 615. In other words, the Court found the contractor's representations alone were not equivalent to a marketing plan that was purposefully designed to induce the public into a scheme, nor did the representations entice the plaintiff to enter into a contractual relationship. *Id.*

ICON asserts that Gaudet's proof in support of his bait-and-switch allegation merely involved representations made in one-on-one settings during ongoing negotiations similar to those rejected by *Baldwin*. ICON reads *Baldwin* as controlling and further emphasizes that this case was brought to Gaudet's attention even before he filed suit. They did so in their response to his demand letter. Because Gaudet nonetheless alleged a bait-and-switch scheme as a basis of his suit, ICON contends that this factor alone established he had pursued a groundless claim without making a reasonable inquiry into the legal and factual basis of this cause of action. *See* § 17.46(b)(9). Closely aligning with this analysis, the trial court concluded that Gaudet's claim was groundless because "Gaudet could not point to a single advertisement of price in any of his thousands of pages of evidence[.]"

On review, however, we are not persuaded that *Baldwin* is dispositive of our relevant inquiry. In *Baldwin*, the Supreme Court had no need to address a claim of groundlessness as none

8

was asserted in that case. Moreover, the holding in *Baldwin*—that a contractor's representation to the plaintiff that a home would pass inspection—is factually distinguishable from Gaudet's claim. Despite *Baldwin's* holding, Gaudet may assert a good-faith argument distinguishing the facts of his claim from that case. Gaudet claimed by his suit that ICON had publicly advertised their home-building services including the word "custom" with their public-facing materials, yet their services did not actually include any custom-building services. Additionally, Gaudet's attorney testified that ICON's use of the word "custom" on their signs supported a bait and switch allegation because it could be argued that the signs were misleading. Factually, then, Gaudet's claim differs from *Baldwin*. Gaudet testified he believed ICON's advertisement to be misleading and he asserted they successfully induced him into entering into negotiations.

Additionally, the plain language of § 17.46(b)(9) provides a claim for "advertising goods or services with intent not to sell them as advertised." *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(9). Given the specific facts and evidence in this case, Gaudet relied on the statute to allege ICON advertised with the word "custom" even though it knew it did not actually build "custom" homes. Gaudet's evidence ultimately proved to be insufficient to support his § 17.46(b)(9) claim. Even still, courts recognize that a claim lacking merit does not necessarily mean it was groundless per se. *See Drummond*, 508 S.W.3d at 674; *Wenger*, 648 S.W.3d at 455; *see also Young v. Pulte Homes of Tex., L.P.*, No. 02-14-00224-CV, 2016 WL 4491517, at *11 (Tex. App.—Fort Worth Aug. 26, 2016, no pet.) (holding that—although a subcontractor will generally not be liable to a homeowner for poor workmanship under the DTPA unless there is a contractual relationship with the owner—plaintiff's claims were not groundless when such a rule is not absolute, and the suit is brought in good faith, arguing for an extension, modification, or reversal of existing law).

Accordingly, for all these reasons, we conclude the trial court erred in concluding that Gaudet's claim brought under § 17.46(b)(9) had no basis in law or fact rendering them groundless.

## 2. The remainder of Gaudet's claims

ICON asserts the remainder of Gaudet's claims were groundless because they were precluded by other various cases. However, none of ICON's cited cases include findings of groundlessness; instead, they decided DTPA claims on their merits. *See Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (holding that proving unconscionable conduct under the DTPA involves a showing that the defendant took advantage of the consumer's lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated"); *Washburn v. Sterling McCall Ford*, 521 S.W.3d 871, 875 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that "[m]ost of the abuses [under § 17.46(b)(11) deal with conveying the false impression in an effort to promote products and services that the seller is bankrupt, liquidating its inventory, going out of business, or losing its lease"). Although the cited authorities involve DTPA claims that all failed on their merits due to insufficient evidence, none address whether the asserted claims were groundless as brought.

Additionally, ICON contends that Gaudet's claims were precluded by the plain language of the statute because the evidence showed that Gaudet's allegations did not line up with the language of the provisions. We disagree with ICON's arguments. Again, the test for groundlessness is "whether the totality of the tendered evidence demonstrates an arguable basis in fact and law for the consumer's claim." *Splettstosser*, 779 S.W.2d at 808. Viewing the facts and circumstances available to Gaudet at the time he filed his lawsuit, the totality of evidence established an arguable basis for his claims. *Id.*; *see also Davila v. World Car Five Star*, 75 S.W.3d 537, 542–43 (Tex. App.—San Antonio 2002, no pet.) (stating court must examine facts available

10

to litigant and circumstances existing when litigant filed his pleading when determining whether DTPA claim is groundless).

Although Gaudet's claims ultimately failed on their merits based on a lack of evidence establishing that ICON had violated provisions of the DTPA, that outcome alone does not necessarily equate with him bringing groundless claims. *Wenger*, 648 S.W.3d at 455 (stating a showing that claims were not a winner or lacked legal merit was insufficient to establish groundlessness). In addition to testifying that he reviewed the statutes and consulted with attorneys before filing his claims, Gaudet also testified to the factual basis of his claims. He described that ICON waited until he had become emotionally invested with its products and services before its quoted price estimates noticeably changed. He provided evidence of six changes throughout the buying process, testifying that he filed his various claims because he felt ICON had taken advantage of his inferior knowledge of real estate pricing.

Given the evidence presented and Gaudet's arguments in support of his claims, we conclude Gaudet gave a good-faith argument for the extension, modification, or reversal of existing law. *See Donwerth*, 775 S.W.2d at 637 (concluding claims were not groundless as a matter of law); *Drummond*, 508 S.W.3d at 674 (finding claims were not groundless when counsel testified he reviewed the DTPA and "select[ed] those possible claims that could be warranted by the facts as [he] understood them or as [he] reasonably expected them to ultimately be after discovery"); *Young*, 2016 WL 4491517, at *11 (holding claims were not groundless even if caselaw provided claims were typically not recoverable because the rule was not absolute and a good-faith argument for extension, modification, or reversal was given); *Riddick v. Quail Harbor Condo. Ass'n, Inc.*, 7 S.W.3d 663, 678 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding the trial court erred in concluding the appellant's claims were groundless when ICON argued against his consumer status and appellant made a good-faith argument for the extension, modification, or reversal of existing

11

law). Thus, on the record presented, the trial court erred in concluding the remainder of Gaudet's claims were groundless.

### 3. Statute of limitations

Lastly, ICON argued, and the trial court concluded, that Gaudet's claims were groundless because "the statute of limitations had run before [ICON] entered an appearance in this matter after never having been served by Gaudet." ICON contends that Gaudet's acts in continuing a lawsuit that was barred by the statute of limitations amounted to a groundless suit.

ICON argues Gaudet's claims accrued on January 8, 2019, because he alleged ICON's misrepresentations had occurred between October 12, 2018, and January 8, 2019. Gaudet challenges the timeline, asserting his claims did not accrue until January 16, 2019, when ICON rejected his demand letter. Regardless, Gaudet filed suit against ICON on November 9, 2020, or well before the expiration of two years from either date. *See* Tex. Bus. & Com. Code Ann. § 17.565 (providing a DTPA cause of action "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice").

Still, ICON argued that Gaudet's suit was barred by limitations because he failed to serve process prior to the limitation's deadline. For sure, a timely filed suit will not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation. *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007). If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing. *Id.* Once a defendant has affirmatively pleaded the limitations defense and shown that service was effected after limitations expired, the burden shifts to the plaintiff to explain the delay. *Id.* at 216. Thus, a plaintiff shoulders a burden to present evidence regarding the efforts made to serve a defendant and to explain every

12

lapse in effort or period of delay. *Id.* But if a plaintiff's explanation for a delay raises a material fact issue concerning the diligence of service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient. *Id.*

Relying on *Proulx*, ICON contends that Gaudet failed to effect service before expiration of the limitations period. ICON contends that Gaudet's counsel did not even receive the citations for service until December 15, 2020, and waited until January 11, 2021, to attempt service. ICON asserts that because Gaudet failed to timely effect service before expiration of limitations, that delay alone establishes that his lawsuit was groundless. We disagree. Gaudet presented evidence establishing he had sought a citation from the court clerk on December 2, 2020, but the clerk's use of a mistaken email address caused a two-week delay. Gaudet further demonstrated that service attempts were made three consecutive days, on January 11, 12, and 13, all before limitations expiration. Although Gaudet planned on filing a motion for substitute service, it became unnecessary when ICON filed an answer. From these circumstances, Gaudet contends that any delay in serving ICON presented a material fact issue under *Proulx*. *Id.*

On this record, we cannot say ICON conclusively showed how Gaudet's explanation was insufficient. *Id.* And, more relevant to this proceeding, ICON has not shown how these facts support a claim of groundlessness. We conclude the trial court erred in concluding Gaudet's suit was groundless. *See Arizpe v. Principal Life Ins. Co.*, No. 3:18-CV-1010-G, 2019 WL 4246598, at *4 (N.D. Tex. Sept. 6, 2019) (concluding plaintiff's suit was not groundless by virtue of the statute of limitations because "the plaintiffs made multiple good faith arguments for the extension of law by arguing that the doctrines of equitable estoppel and quasi-estoppel prevent Principal from asserting its limitation defense"); *Jacquez v. Compass Bank*, No. EP-15-CV-26-RFC, 2016 WL 4368265, at *2 (W.D. Tex. July 11, 2016) (concluding claim not groundless when "Plaintiff had an arguable basis for maintaining that Plaintiff had exercised sufficient diligence to conclude

13

that the date Plaintiff should have discovered the pertinent fact was the date Plaintiff actually discovered it, such that the complaint had been timely filed within the statute of limitations").

We conclude the record does not establish that Gaudet pursued a lawsuit that lacked a basis in fact or law, or one not warranted by a good-faith argument under the DTPA. *See Donwerth*, 775 S.W.2d at 638. Accordingly, the trial court abused its discretion in finding Gaudet's suit was groundless. We sustain Gaudet's second point of error and reverse the trial court's award of attorney's fees to ICON.

## IV. CROSS-APPEAL: NO FINDING OF BAD FAITH

By their cross-appeal, ICON's sole issue contends that the trial court erred in finding that Gaudet's DTPA claims were not filed in bad faith.

A claimant brings a suit in "bad faith" if he or she is "motivated by malicious or discriminatory purpose." *Barkhausen v. Craycom, Inc*, 178 S.W.3d 413, 422 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Schlager v. Clements*, 939 S.W.2d 183, 190 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

ICON contends that Gaudet had claimed he filed his lawsuit solely because of his feelings of frustration and to purportedly protect other "victims." Because Gaudet never identified any other "victims," ICON argues that Gaudet's only motivation to file suit was to "establish himself as a warrior for justice, protecting imaginary 'victims' against the evil corporation[.]" ICON asserts this admission demonstrates Gaudet's ill will and feelings of spite against it. Additionally, ICON contends that Gaudet's claims were maliciously pursued. It maintains that Gaudet had exploited his status as an attorney wherein he tried to intimidate it into building a home for a fraction of its cost. In that same vein, it urges that Gaudet carelessly pursued his lawsuit, asserting claims that were not supported by Texas law.

14

When asked about his motivation in filing suit, Gaudet testified he recognized he had wanted the house he had "dreamed of" with "pretty views," but not accomplishing that goal, at the very least, he wanted "decent compensation" for all that he went through. He added that he also hoped his lawsuit would make it "less likely to happen to other people."

Based on our review of the record, we conclude that Gaudet pleaded an arguable basis for his suit and ICON failed to present evidence supporting its contention that Gaudet acted in bad faith and was motivated by a malicious or discriminatory purpose in bringing his claims. *Barkhausen*, 178 S.W.3d at 423. We overrule ICON's sole issue on cross-appeal.

## V. CONCLUSION

Because we conclude that Gaudet's claims were neither groundless in law or fact, nor brought in bad faith, we reverse the trial court's judgment to the extent it ordered that ICON recover judgment against Gaudet. We otherwise affirm the judgment to the extent it ordered that Gaudet take nothing from ICON.

GINA M. PALAFOX, Justice

August 28, 2024

Before Alley, C.J., Palafox, J., and Barajas, C.J. (Senior Judge)
Alley, C.J. (dissenting)
Barajas, C.J. (Senior Judge) (Sitting by Assignment)

15