**Gloria Hernandez DeAnda OSORNO, Appellant,**

v.

**Henry OSORNO, Appellee.**

No. 14–00–00070–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 21, 2002.

Gus E. Pappas, Houston, for appellants.

Jon A. Jaworski, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

SCOTT BRISTER, Chief Justice.

In this divorce action, appellant Gloria Hernandez DeAnda Osorno, former spouse of appellee Henry Osorno, contests (1) the enforcement of the couple's premarital agreement, (2) the denial of her motion for continuance, and (3) the division of the marital estate. We affirm in part and reverse and remand in part.

Gloria was forty years old when she met Henry in February 1992. In August, Gloria discovered she was pregnant. According to her, Henry wanted her to have an abortion, which she refused for religious reasons. In September, Henry agreed to marry her if she signed a premarital agreement. Both Henry and Gloria signed an Agreement in Contemplation of Marriage on October 9, 1992, and were married the following day.

Henry filed for divorce on December 22, 1998. Gloria contested the enforceability of the premarital agreement. A hearing was held before a master at which both Henry and Gloria testified. The master found the agreement enforceable.

### Enforceability of the Premarital Agreement

As the party attacking a premarital agreement, Gloria had the burden to show (1) she did not sign the agreement voluntarily or (2) it was unconscionable and she did not receive proper disclosure

of Henry's property. TEX. FAM.CODE ANN. § 4.006(a) (Vernon 1998). Gloria relies on the first ground, arguing she signed the premarital agreement involuntarily because she was forty, unmarried, and pregnant. The Family Code provides no definition of "voluntarily." In construing section 4.006(a), this Court has previously referred to commercial law governing enforcement of contracts for guidance. *See Marsh v. Marsh*, 949 S.W.2d 734, 739–40 (Tex.App.-Houston [14th Dist.] 1997, no writ) (looking to contract cases for definition of "unconscionable").

■ For duress to be a contract defense, it must consist of a threat to do something the threatening party has no legal right to do. *See Brown v. Aztec Rig Equip., Inc.*, 921 S.W.2d 835, 845 (Tex. App.-Houston [14th Dist.] 1996, writ denied). In this case, aside from his moral duties, Henry had no legal duty to marry Gloria. His threat to do something he had the legal right to do is insufficient to invalidate the premarital agreement. Gloria was faced with difficult choices, but we cannot find her decision to sign the agreement was involuntary. *See In re Marriage of Dawley*, 17 Cal.3d 342, 131 Cal. Rptr. 3, 551 P.2d 323, 331 (1976) (refusing to set aside premarital agreement signed under pressure of unplanned pregnancy). We overrule Gloria's first point of error.

### Denial of Motion for Continuance

■ After the hearing regarding the premarital agreement on July 14, 1999, the parties were notified to return for trial on August 5, 1999, at 9 a.m. On the morning of trial, Gloria did not appear, and her counsel requested a continuance because of medical disability. The parties vigorously contested whether she was tru-

ly disabled. The master hearing evidence denied the motion for a continuance and ordered the parties to reappear at 1 p.m. Gloria arrived at 1:18 p.m. shortly after trial had begun, and testified at length. Gloria argues the trial court erred in denying her motion for a continuance.

Gloria's motion was supported by two letters from her treating physicians, but neither was sworn. Without sworn affidavits, the motion was insufficient. TEX.R. CIV. P. 251; *Mathew v. McCoy*, 847 S.W.2d 397, 399 (Tex.App.-Houston [14th Dist.] 1993, no writ). We overrule Gloria's third issue.

### Just and Right Division of the Marital Estate

■ In her second point, Gloria asserts there is no evidence to support the trial court's disproportionate division of the marital estate.[1] *See* TEX. FAM.CODE ANN. § 7.001. The trial court exercises wide discretion in this division, and we may reverse only in a case of clear abuse. *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981).

■ In this case, there are no findings of fact or conclusions of law, and the divorce decree does not expressly list what property was found to be separate or community. Assuming all property in the "Division of Marital Estate" portion of the decree was community, *see Magill v. Magill*, 816 S.W.2d 530, 532–33 (Tex.App.-Houston [1st Dist.] 1991, writ denied) (finding property listed under designation "estate of the parties is divided as follows" was characterized as community property), the court awarded almost three-fourths of the estate to Henry (using his own property values). Although the court was not

---

1. Although the master conducted the trial on the merits, the trial court signed the divorce decree.

**512**

required to divide the marital estate equally, there must be a reasonable basis for the division. *Zieba v. Martin,* 928 S.W.2d 782, 790 (Tex. App Houston [14th Dist.] 1996, no writ). Here, there was none, as the evidence established Henry was in much better financial shape than Gloria.[2]

The inequity of this division shrinks or even disappears if several of the assets awarded to Henry were his separate property. Henry argues that accounts listed in the decree totaling almost $100,000 were designated his separate property in the parties' premarital agreement. But the only evidence as to the source of funds placed in those accounts was Henry's testimony; no deposit slips or bank records were offered tracing the money to support Henry's claim. Without tracing, Henry's testimony cannot overcome the community property presumption. *See Evans v. Evans,* 14 S.W.3d 343, 346 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Robles v. Robles,* 965 S.W.2d 605, 614 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (explaining that mere testimony without tracing is generally insufficient). Because the evidence is insufficient to support a separate-property finding, we sustain Gloria's second point of error.

We affirm the judgment finding the premarital agreement enforceable, but reverse the portion of the final decree of divorce dealing with the division of the marital estate and remand for a just and

right division of the community estate. *See Evans,* 14 S.W.3d at 347 (holding mischaracterization that materially affected just and right division required remand).

2. Testimony showed Henry earned a base salary of $7,355 per month in addition to an annual incentive bonus of up to $42,000, while Gloria owned an unprofitable retail clothing store she had funded by a $56,000 personal injury settlement. Although Gloria and Henry were named joint-managing conservators of their child, Gloria (who had stayed at home for nearly seven years raising their son) was to maintain his primary residence, with Henry to pay $1,200 per month in child support. While the evidence relating to the other applicable factors is conflicting,

none lends support for a division in Henry's favor. *See Zieba,* 928 S.W.2d at 790–91. At the time of trial, Gloria was scheduled to have back surgery related to a 1994 car accident. Both parties used community assets to pay separate debts, and after the petition for divorce was filed, Henry replaced a $250,000 universal life insurance policy with a $400,000 term policy, spending the cash value. There was no testimony that Henry's educational background was more limited than Gloria's or that Gloria was at fault in the breakup of the marriage.