Affirmed in Part; Reversed and
Remanded in Part; and Memorandum Opinion filed September 13, 2011.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00606-CV



 

J. A. “Jay” Asafi, INDIVIDUALLY
AND as Independent Administrator of the Estate OF ALOSIA SMITH RAUSCHER,
DECEASED, and Todd Reagan Smith,
Appellants

V.

Martin J. Rauscher, Appellee

 



On Appeal from the Probate Court
No. 2

Harris County, Texas

Trial Court Cause No. 381,121



 

MEMORANDUM  OPINION



J. A. “Jay” Asafi, as independent administrator of
the estate of Alosia Smith Rauscher, deceased, and Alosia’s surviving son, Todd
Reagan Smith, sued Alosia’s surviving husband, Martin J. Rauscher, in probate
court following the successful probate of Alosia’s will.  Martin filed a counterclaim
against Alosia’s estate, Todd, and Asafi, individually and as independent
administrator, regarding ownership of certain property.  We affirm in part,
reverse in part, and remand to the trial court.

BACKGROUND

Martin and Alosia married in 1992.  Todd is Alosia’s
son from a previous marriage.  Alosia suffered a severe stroke in May 2008.  Todd
and Asafi visited Alosia in the hospital on June 2, 2008, at which time Alosia
signed (1) a medical power of attorney in favor of Todd; and (2) a durable
power of attorney designating Asafi as her agent and attorney-in-fact.  Asafi,
acting as “attorney-in-fact for Alosia Smith Rauscher,” signed a document
purporting to grant, convey, and assign to Todd “all right, title, and
interest” in “any accounts, including checking accounts, investment accounts,
and retirement accounts, as well as any safety deposit boxes associated therewith”
on June 3, 2008.[1] 
Alosia died on June 12, 2008.

Todd filed an application to probate Alosia’s will,
which was granted on July 11, 2008.[2] 
Asafi was appointed independent administrator of Alosia’s estate.  Todd filed
an original petition against Martin under the same cause number in which he
asserted claims for unjust enrichment, tortious interference with inheritance
rights, and conversion.  Todd alleged in his petition that he is entitled to
Alosia’s assets by virtue of the purported assignment or Alosia’s will, and
that Martin had “improperly claim[ed]” an interest in these assets.[3] 
Asafi, acting as independent administrator of Alosia’s estate, also filed an
original petition against Martin alleging that Martin had “taken control of certain
accounts that are presumed to be Estate property until the issues of ownership
between [Todd] and [Martin] are resolved.”  

 

Martin filed a counterclaim for declaratory relief
against Alosia’s estate, Todd, and Asafi, individually and as administrator of
Alosia’s estate.  Martin alleged in support of his counterclaim that he is the
owner of certain stock, bank, and brokerage accounts as a transfer-on-death
designee, beneficiary, or joint tenant with rights of survivorship pursuant to various
non-testamentary transfer agreements.[4] 
Martin also sought attorney’s fees in connection with his request for
declaratory relief.

Asafi submitted an inventory of “all [of Alosia’s]
separate and community property” for the probate court’s approval.  The inventory
included tangible property and numerous stock, bank, and brokerage accounts
held by Alosia and Martin.

Martin filed seven motions for partial summary
judgment regarding his asserted ownership of certain property identified in the
inventory: 

1.                 
Alosia and Martin’s FivePoint, Vanguard, Cohen & Steers, Merger
Fund, and Woodforest joint accounts, for which Martin claims a right of
survivorship; 

2.                 
Martin’s separately owned Vanguard individual retirement accounts, which
he argues are traceable to his separate property; 

3.                 
Alosia’s separately owned Chevron stock and Vanguard non-retirement and individual
retirement accounts, for which Martin claims ownership as a transfer-on-death
designee or beneficiary; and 

4.                 
Martin’s community property interest in cash dividends paid on Alosia’s separately
owned Chevron stock during her marriage to Martin.  

 

Martin also filed a
traditional and no-evidence motion for partial summary judgment on Todd’s affirmative
claims of tortious interference with inheritance rights, conversion, and unjust
enrichment.  The trial court granted all eight partial summary judgments in
favor of Martin.

Martin then filed a motion for attorney’s fees based
on the declaratory relief granted by the trial court and a motion for sanctions
against appellants.  Martin argued, among other things, that appellants should
be sanctioned pursuant to Texas Rules of Civil Procedure 13 and 215 and Chapter
10 of the Texas Civil Practice and Remedies Code because “[t]hroughout this
litigation [Todd] and Asafi acted in concert to harass [Martin] by filing
identical lawsuits [in multiple courts], engaging in harassing, duplicative and
unnecessary discovery and asserting claims that had no basis in law or fact. .
. .  Each of [Asafi and Todd’s] claims were frivolous, groundless and asserted
to intimidate and harass [Martin].”  Martin submitted evidence of the
attorney’s fees he incurred (1) due to the sanctionable conduct detailed in his
motion; (2) preparing the motion for sanctions; and (3) prosecuting and
obtaining the requested declaratory relief.  The trial court granted the request
for sanctions and scheduled a bench trial on attorney’s fees based on the
declaratory relief and appellants’ sanctionable conduct.  The trial court
denied appellants’ jury requests on the issue of reasonable and necessary
attorney’s fees Martin incurred in seeking declaratory relief.

In an eight-page order detailing findings to support
its conclusion that good cause existed to sanction appellants, the trial court invoked
its authority under Texas Rules of Civil Procedure 13 and 215 and Chapter 10 of
the Texas Civil Practice and Remedies Code.  The trial court ordered that appellants
are jointly and severally liable to Martin for (1) $25,250 in “reasonable and
necessary attorney’s fees incurred by [Martin] as the result of [Todd] and
Asafi’s sanctionable conduct;” (2) $2,500 in “reasonable and necessary
attorney’s fees incurred in bringing this Motion for Sanctions;” (3) $10,000 in
“additional attorney’s fees if [Todd] or Asafi unsuccessfully appeal[] this
award of sanctions to the Court of Appeals;” and (4) $3,500 in “attorney’s fees
if [Todd] or Asafi unsuccessfully file[] a petition for review of this award of
sanctions in the Texas Supreme Court.”  

The trial court signed a final judgment on March 12,
2010, in which it ordered that Todd and Asafi, as independent administrator of
Alosia’s estate, are jointly and severally liable to Martin for (1) $54,250 in
“reasonable and necessary attorney’s fees as are equitable and just [that were]
incurred by [Martin] in pursuit of [declaratory relief];” (2) $25,000 “in the
event the judgment is appealed to the Court of Appeals and the Court of Appeals
upholds the judgment;” and (3) $10,000 “in the event that the judgment is
appealed to the Supreme Court of Texas, and the judgment is affirmed.”  The
final judgment also approves the inventory, subject to the prior rulings and
orders of the trial court; incorporates the partial summary judgments and the sanctions
order; awards $82,000 in post-judgment interest to Martin; and adjudges “all
costs of court spent or incurred in this cause” against appellants.  Appellants
requested findings of fact and conclusions of law; the trial court signed nine
pages of findings of fact and conclusions of law concerning the partial summary
judgments, attorney’s fees, and sanctionable conduct.

Appellants argue on appeal that the trial court erred
in (1) “granting summary judgment;” (2) “awarding attorney’s fees;” (3)
“awarding sanctions;” and (4) “not making additional findings of fact and
conclusions of law.”

I.         Partial Summary
Judgments on Non-Testamentary Transfers

In their first issue, appellants argue that the trial
court erred in “granting summary judgment” as to Martin’s ownership of the property
in dispute because (1) Asafi, acting as “attorney-in-fact for Alosia,” assigned
“all right, title, and interest” in Alosia’s accounts to Todd; (2) the
purported assignment revoked Martin’s rights of survivorship; and (3) the trial
court erred in overruling appellants’ objections to evidence Martin proffered
to prove his ownership of the account assets.  Appellants also argue that the
trial court erred in granting partial summary judgment on Martin’s (1) claimed
community interest in cash dividends paid on Alosia’s separately owned Chevron
stock; and (2) ownership of Martin’s separately owned Vanguard accounts based
on his ability to trace the account assets to his separate property.  Finally,
appellants argue that the trial court erred in granting partial summary
judgment on Todd’s affirmative claims against Martin because “it is clear” that
Martin’s transfer of funds from the accounts “gives rise to a cause of action”
for tortious interference, conversion, and unjust enrichment.  

An appellate court applies de novo review to a
grant of summary judgment, using the same standard that the trial court used in
the first instance.  Duerr v. Brown, 262 S.W.3d 63, 68 (Tex.
App.—Houston [14th Dist.] 2008, no pet.) (citing Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005)).  A party may move for a
traditional summary judgment after the adverse party has appeared or answered,
and for a no-evidence summary judgment after an adequate time for discovery has
passed. Id. (citing Tex. R. Civ. P. 166a(a), (i), and McMahan
v. Greenwood, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003,
pet. denied)).

A traditional summary judgment under Rule 166a(c) may
be granted if the motion and evidence show there is no genuine issue of
material fact and the moving party is entitled to judgment as a matter of law.  Id.
(citing Tex. R. Civ. P. 166a(c), and Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548 (Tex. 1985)).  The non-movant has no burden to respond to a
summary judgment motion unless the movant conclusively establishes its cause of
action or defense.  M.D. Anderson Hosp. & Tumor Inst. v. Willrich,
28 S.W.3d 22, 23 (Tex. 2000).  Once the movant produces sufficient evidence
conclusively establishing his right to summary judgment, the burden of proof
shifts to the non-movant to present evidence sufficient to raise a fact issue.  Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  In reviewing a traditional
summary judgment, we examine the entire record in the light most favorable to
the non-movant, indulging every reasonable inference and resolving any doubts
against the motion.  Yancy v. United Surgical Partners Int’l, Inc., 236
S.W.3d 778, 782 (Tex. 2007). 

A no-evidence motion for summary judgment under Rule
166a(i) must be granted if (1) the moving party asserts that there is no
evidence of one or more specified elements of a claim or defense on which the
adverse party would have the burden of proof at trial; and (2) the respondent
produces no summary judgment evidence raising a genuine issue of material fact
on those elements.  Duerr, 262 S.W.3d at 69 (citing Tex. R. Civ.
P. 166a(i)).  In reviewing a no-evidence motion for summary judgment, we view
all of the summary judgment evidence in the light most favorable to the
non-movant, “crediting evidence favorable to that party if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not.”  Id.
(quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).  The
non-moving party is not obligated to marshal its proof, but it is required to
present evidence that raises a genuine fact issue on the challenged element.  Id.
(citing Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002)).  

A.        Purported Assignment 

Appellants first argue that Asafi, acting as
“attorney-in-fact for Alosia,” assigned to Todd “all right, title, and
interest” in Alosia’s accounts.  Accordingly, appellants contend that the trial
court improperly granted each partial summary judgment in favor of Martin
because Todd “became the owner of Alosia’s interest in the accounts” on the
date of the assignment.  In making this argument, appellants do not distinguish
among the various types of accounts and non-testamentary transfer agreements at
issue in the relevant partial summary judgments granted by the trial court.  Appellants
cite to general rules regarding assignments and inter vivos gifts; appellants
do not explain how these general rules apply to non-testamentary transfer
agreements, and they do not explain how the purported assignment is effective
as against (1) the specific agreements between Alosia and Martin to hold
property in joint accounts as joint tenants with rights of survivorship; or (2)
the transfer-on-death and beneficiary designations relevant to the other non-testamentary
transfers.  We overrule appellant’s issue with respect to this argument.  See
Tex. R. App. P. 38.1(i).

Appellants argue that the purported assignment
“revoked any account agreements between Alosia and [Martin],” citing authority
relevant only to the joint accounts with survivorship agreements.  With respect
to these account agreements, appellants correctly state that “[o]nce [a]
survivorship agreement [is] in place, the only means of revoking it [is]
pursuant to [Section 455 of the Texas Probate Code], i.e., through a subsequent
written agreement or a disposition of the assets covered by the agreement.”  See
Holmes v. Beatty, 290 S.W.3d 852, 861–62 (Tex. 2009); see also Tex.
Prob. Code Ann. § 455 (Vernon 2003) (revocation of agreement to create
survivorship rights in community property).  Appellants contend that the purported
assignment disposed of all of Alosia’s assets and revoked all survivorship
agreements because Martin “was provided with written notice that any purported
right he had to Alosia’s interest in accounts was revoked.”   

An agreement between spouses creating survivorship
rights in community property “‘may be revoked in accordance with the terms of
the agreement.’”  Holmes, 290 S.W.3d at 861 (quoting Tex. Prob. Code
Ann. § 455).  Written notice signed by one spouse and delivered to the other
spouse may effectively revoke a survivorship agreement “‘[i]f the agreement
does not provide a method for revocation.’”  Id. (quoting Tex. Prob.
Code Ann. § 455).  Appellants failed to (1) mention this limitation to the
trial court or on appeal, or (2) argue that the relevant agreements do not provide
a method for revocation.[5] 
Even assuming that the purported assignment is valid, appellants’ unsupported
conclusion that “[it] is crystal clear that the assignment of Alosia’s interest
to [Todd] disposed of Alosia’s interest in the accounts” does not warrant
reversal because appellants have not argued or established the absence of
provisions in the relevant agreements setting forth a method of revocation.  We
overrule appellants’ issue based on this argument.    

B.        Proof of Ownership

Appellants make a number of challenges on appeal to the
summary judgment evidence proffered to show Martin’s ownership of the account
assets.

First, appellants argue that Martin “used documents”
that were “illegible” and included “agreements with pages missing, unreliable evidence,
and extrinsic evidence.”  The record contains a total of eight summary judgment
motions and hundreds of pages of exhibits, but appellants do not cite to the
offending exhibits or explain these assertions.  Appellants cite to general
authority regarding Martin’s burden to show survivorship rights, the use of extrinsic
evidence and parol evidence, and the best evidence rule without explaining how
these cases are applicable to each of the non-testamentary transfer agreements
at issue.  We have no duty to search a voluminous record without more specific
guidance from appellants to determine whether an assertion of reversible error
is valid.  See Casteel–Diebolt v. Diebolt, 912 S.W.2d 302, 305 (Tex.
App.—Houston [14th Dist.] 1995, no writ).  Appellants have presented nothing
for review, and we overrule appellants’ issue based on this argument.  See
Tex. R. App. P. 38.1(i).

Appellants next argue:

One need go
no further than the affidavit of [Martin], attached to Exhibit 1 of his motion to
determine that he is not entitled to summary judgment and, in fact, as a matter
of law is not entitled to the Chevron stock.  [Martin] states plainly and
clearly that ‘[i]n the fall of 2000 Alosia told [him] she wanted to make [him]
the transfer on death beneficiary on book-entry shares she held in Texaco.’ 
[Martin] further states that the Texaco shares were later converted to Chevron
shares.  It is uncontroverted that at the time of her death, Alosia owned
Chevron shares, not Texaco shares.  Accordingly, as a matter of law, he is not
entitled to Chevron shares Alosia owned at the time of her death,
because he admits Alosia wanted him to be the transfer on death beneficiary of
any Texaco shares she owned, which she did not own at the time of her
death.[6]

Appellants do not challenge
Martin’s assertion that “[i]n October 2001, Texaco merged with Chevron and all
Texaco shares in the transfer on death registration were converted into . . .
Chevron shares.”  Appellants do not cite any authority for their conclusion
that a transfer on death registration must be resubmitted after such a conversion. 
We overrule appellants’ issue based on this argument.  See Tex. R. App.
P. 38.1(i).

Appellants next argue: 

The trial
Court overruled Appellants’ objections . . . under Rule 1002, Texas Rules of
Evidence, the Best Evidence Rule, and Texas Probate Code § 456(a) as well as
for non-relevant extrinsic evidence, conclusory evidence, hearsay, and
violations of Rule 601(b), T.R.E., to [Martin’s] summary judgment evidence. 
The law is crystal clear that Appellants’ objections should have been
sustained, because the evidence was inadmissible.  Mercer v. Daoran Corp.,
676 S.W.2d 580, 584 (Tex. 1984); Parker v. JP Morgan Chase Bank, 95
S.W.3d 428, 431 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Gary E.
Patterson & Assocs., P.C. v. Holub, 264 S.W.3d 180, 197 (Tex.
App.—Houston [1st Dist.] 2008, pet. denied); Texas Probate Code § 456(a).[7]

Appellants provide no
additional explanation or argument in support of this statement.  The cases
cited by appellant are inapplicable.  See Mercer, 676 S.W.2d at 583–84 (an
unexecuted “copy” of an executed agreement, along with testimony that original
agreement was executed, did not satisfy best evidence rule because absence of executed
agreement was not explained and “copy” was not a purported reconstruction of
the executed agreement); Parker, 95 S.W.3d 431–32 (payee on death
account was never created because decedent failed to sign the agreement); Holub,
264 S.W.3d at 197 (general explanation of limitations on use of parol
evidence).  Texas Probate Code section 456(a) does not relate to the
admissibility of evidence.  See Tex. Prob. Code Ann. § 456(a) (Vernon
2003) (requirements for application to adjudicate agreement between spouses creating
a right of survivorship in community property).  Appellants have presented
nothing for review and we overrule appellants’ issue based on this argument.  See
Tex. R. App. P. 38.1(i).         

C.        Community Interest in Cash Dividends

Appellants argue that Martin has no interest in half of
the cash dividends paid from Alosia’s separately owned Chevron stock during her
marriage to Martin because “[a]n increase in the value of separate-property
stock remains separate property.”

Martin argued in his summary judgment motion that
Alosia’s separately owned Chevron stock generated cash dividends during her
marriage to Martin in the amount of $25,352.88.  Martin contends that he is
entitled to half of these cash dividends, which were reinvested to purchase
additional Chevron stock, because such income is community property. 
Appellants argue that the reinvested dividends were “stock dividends” and that they
remained Alosia’s separate property because “[a] stock dividend normally is
separate if the stock ownership out of which it springs is separate.”  See
Wohlenberg v. Wohlenberg, 485 S.W.2d 342, 347 (Tex. Civ. App.—El Paso 1972,
no writ).       

“Interest and dividends paid on investments, whether
the investments are separate property or not, are income under Texas law and
are generally community property.”  Fischer-Stoker v. Stoker, 174 S.W.3d
272, 279 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing Alsenz v.
Alsenz, 101 S.W.3d 648, 653 (Tex. App.—Houston [1st Dist.] 2003, pet.
denied)).  We reject appellants’ attempt to characterize the cash dividends as
“stock dividends” that remained Alosia’s separate property because they were reinvested
to purchase additional stock.  See Legrand-Brock v. Brock, 246 S.W.3d
318, 322 n.4 (Tex. App.—Beaumont 2008, pet. denied) (citing Tirado v. Tirado,
357 S.W.2d 468, 473 (Tex. Civ. App.—Texarkana 1962, writ dism’d)
(distinguishing between cash dividends, which are treated like income, and
stock dividends, which are treated as a mutation of property and take the
character of the stock from which they originated when they do not increase the
value of the total stocks owned); see also Duncan v. U.S., 247 F.2d 845,
855 (5th Cir. 1957) (“Dividends are, of course, community, but a stock dividend
normally is that in name only.  It is a mere rearrangement of the formal
corporate bookkeeping structure with no increase in equity ownership.”).  We
overrule appellants’ issue as it relates to this argument.[8]

D.        Martin’s Individual Retirement Accounts

Appellants argue that partial summary judgment should
not have been granted on Martin’s separately owned Vanguard individual
retirement accounts because the affidavit of expert Paula A. Miller, which
Martin proffered in support of his argument that the account assets are traceable
to his separate property, should have been considered “unreliable” by the trial
court.  

Appellants’ reliability challenge is based on their
assertion that Miller’s tracing opinion relied upon incomplete account
information; appellants argue that account information is “missing” because the
evidence reviewed by Miller does not contain statements for every month during Alosia’s
marriage to Martin.[9]
 Martin responds by pointing out that Miller’s affidavit specifically states: “It
should be noted there are not always balances on a monthly basis because
certain of the financial institutions did not issue monthly statements on the
accounts or when there was no activity in the account.  If there was activity
in an account[,] a statement was issued.  Some of the financial institutions
issued statements monthly, quarterly, bi-annual, and on an annual basis.  This
fact does not affect the accuracy of tracing and characterization.”  Appellants
do not argue that the “missing” account information would reveal
unaccounted-for transactions or other inconsistencies with Miller’s tracing opinion. 
We overrule appellants’ issue as it relates to this argument.

E.        Todd’s Affirmative Claims against Martin

Appellants argue that the trial court erred in
granting partial summary judgment on Todd’s affirmative claims against Martin
because “it is clear that by [Martin] taking over Alosia’s interest in accounts
that [Todd] is entitled to,” Martin’s actions “give[] rise to a cause of action”
for tortious interference, conversion, and unjust enrichment.  Appellants’
argument is based on their conclusion that the first seven partial summary
judgments were improperly granted because Martin does not own the account
assets and property.  Because we overrule appellants’ issues challenging the
other partial summary judgments, we also overrule appellants’ challenge to the
trial court’s partial summary judgment on Todd’s affirmative claims against
Martin.

Having rejected all of appellants’ arguments in
support of reversing the trial court’s partial summary judgments, we overrule
appellants’ first issue.

II.        Attorney’s Fees
for Declaratory Relief

Appellants argue in their second issue that the trial
court erred in awarding attorney’s fees Martin incurred in seeking declaratory relief. 
Appellants alternatively argue that if Martin is entitled to attorney’s fees,
the trial court improperly denied appellants’ timely jury request.  

Appellants first contend that Texas Probate Code
sections 456 through 458 exclusively govern Martin’s claims, and that Martin
cannot seek attorney’s fees under the Declaratory Judgments Act because it is
“crystal clear” that sections 456–58 do not allow the recovery of attorney’s
fees.  See Tex. Prob. Code Ann. §§ 456–58 (Vernon 2003).  Appellants
also argue that “the record is crystal clear that [Martin’s] relief is based on
his filing a counterclaim” that “presents no new controversies, but is
engineered solely to pave an avenue for the award of attorney’s fees.”  

Appellants failed to specially except to Martin’s
pleadings or make these arguments at any point to the trial court in their (1) written
response to Martin’s request for attorney’s fees; (2) arguments to the trial
court at the hearing on the amount of attorney’s fees; or (3) post-trial motions. 
Accordingly, appellants have waived these arguments on appeal.  See Tex.
R. Civ. P. 90 (waiver of defects in pleading); Tex. R. App. P. 33.1
(preservation of error for complaint on appeal); Gulf Ins. Co. v. Vantage Props.,
Inc., 858 S.W.2d 52, 55 (Tex. App.—Houston [14th Dist.] 1993, writ denied)
(“Even were we to assume that the claim for declaratory judgment did not
involve matters not already before the court . . . we still are not able to
sustain appellant’s point of error because appellant failed to properly except
to the claim or otherwise raise the issue until [on appeal].”).

Appellants also argue that if Martin is entitled to
attorney’s fees, then appellants are entitled to a jury trial to determine the
amount of attorney’s fees.  We agree that a party is entitled to a jury trial
on the issue of the amount of reasonable and necessary attorney’s fees incurred
in pursuit of declaratory relief.  See Tex. Civ. Prac. & Rem. Code §
37.009 (Vernon 2008) (“In any proceeding under [the Declaratory Judgments Act],
the court may award costs and reasonable attorney’s fees as are equitable and
just.”); City of Garland v. Dallas Morning News, 22 S.W.3d 351, 367–68
(Tex. 2000) (plurality opinion) (citing Bocquet v. Herring, 972 S.W.2d
19, 21 (Tex. 1998)) (majority holding that party was entitled to jury trial on
issue of reasonable and necessary attorney’s fees under the Texas Public
Information Act, in part, because “similarly-worded provision in the
Declaratory Judgments Act . . . requires the trial court to determine whether
to award attorney’s fees and allows the jury to determine the amount of
reasonable attorney’s fees;” concluding that the court of appeals did not err
in remanding the attorney’s fees issue for a jury determination); Ogu v.
C.I.A. Servs. Inc., No. 01-07-00933, 2009 WL 41462, at *3–5 (Tex.
App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (appellants were entitled to
but denied a jury trial on the issue of the amount of attorney’s fees;
reversing and remanding issue because appellants “disputed the veracity” of
testimony supporting amount of fees requested and continued to insist on their
right to a jury to hear evidence).     

Martin does not dispute that appellants timely
requested a jury trial and paid the fee.  The trial court stated that
appellants’ request was denied because “there are cases all over the place. 
I’m choosing to follow the extreme authority that in a dec action the
attorney’s fees are subject to the sound discretion of the Court.  I’m not
going to submit it to the jury.”[10] 
We conclude on this record that the appellants erroneously were deprived of
their right to a jury trial on the issue of the amount of reasonable and
necessary attorney’s fees Martin incurred seeking declaratory relief.  See City
of Garland, 22 S.W.3d at 367–68; Ogu, 2009 WL 41462, at *3–5.  To
this extent, we sustain appellants’ second issue and remand this case for a
jury trial on that issue.

III.      Sanctions
Award

Appellants argue in their third issue that the trial
court abused its discretion in awarding sanctions because (1) the trial court
“refused to specify the Rule associated with each violation and refused to . .
. state the specific factual basis of each sanction; and (2) the various
allegations of sanctionable conduct against Asafi and Todd are “against the
evidence . . . and amount[] to no evidence” or do not constitute sanctionable
conduct.[11]  
  

We review a trial court’s imposition of sanctions for
an abuse of discretion.  Am. Flood Research, Inc. v. Jones, 192 S.W.3d
581, 583 (Tex. 2006) (citing Cire v. Cummings, 134 S.W.3d 835, 838 (Tex.
2004)) (discovery sanctions under Texas Rule of Civil Procedure 215); Barkhausen
v. Craycom, Inc., 178 S.W.3d 413, 419–22 (Tex. App.—Houston [1st Dist.]
2005, pet. denied) (sanctions under Texas Rule of Civil Procedure 13 and Texas
Civil Practice and Remedies Code Chapter 10).  The ruling will be reversed only
if the trial court acted “without reference to any guiding rules and
principles,” such that its ruling was arbitrary or unreasonable.  Am. Flood
Research, 192 S.W.3d at 583 (citing Cire, 134 S.W.3d at 839).  

With respect to appellants’ first argument, the trial
court’s eight-page sanctions order states that “there is good cause to sanction
Asafi and [Todd] because their actions in this matter violated Rules 13 and 215
of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil
Practice and Remedies Code.  Specifically[,] the Court finds that throughout
the litigation Asafi and [Todd] repeatedly acted in concert in filing
groundless pleadings and in bad faith; knowingly filed the same claims in two
separate courts; asserted frivolous claims that had no basis in law or fact;
engaged in duplicative and unnecessary discovery and took actions designed to
delay the proceedings and harass [Martin] and thereby did cause unnecessary
delay and caused [Martin] to incur unnecessary attorney[’]s fees.”  

This statement is followed by eighteen paragraphs
detailing the particular conduct supporting the trial court’s conclusion, as
well as the trial court’s findings regarding the amount of attorney’s fees that
were incurred by Martin “as a result of Asafi and [Todd’s] improper and sanctionable
conduct . . . .  If Asafi and [Todd] had acted in good faith and not engaged in
the above conduct, [Martin] would not have had to incur the majority of legal
fees he incurred.”  Appellants do not challenge on appeal the propriety or
proportionality of the amount awarded.

We conclude that the trial court’s order sufficiently
identifies the rules associated with the relevant violations and satisfies the
particularity requirements applicable to sanctions under Chapter 10 and Rule
13.  See Tex. Civ. Prac. & Rem. Code Ann. § 10.005 (Vernon 2002) (“A
court shall describe in an order imposing a sanction under this chapter the
conduct the court has determined violated Section 10.001 . . . .”); Tex. R.
Civ. P. 13 (good cause for sanctioning party for filing a groundless pleading
brought in bad faith or harassment must be stated in the sanctions order with
particularity); Barkhausen, 178 S.W.3d at 420–22 (trial court abused its
discretion in awarding sanctions because it failed to “particularize the
conduct it found warranted sanctions” under Rule 13 and Chapter 10 and the
evidence did not otherwise support sanctions).[12] 


Appellants failed to sufficiently brief their remaining
arguments regarding the trial court’s factual findings and legal conclusions supporting
the sanctions against appellants.  In support of each challenge to the
sufficiency of the evidence, appellants cite to the same range of over four
hundred transcript pages taken at the hearing on Martin’s motion for sanctions
and trial on the amount of attorney’s fees.  In support of each statement that
certain conduct is not sanctionable as a matter of law, appellants cite
irrelevant authority and fail to provide any accompanying analysis.  We
overrule appellants’ issue as it relates to these arguments.  See Tex.
R. App. P. 38.1; Casteel–Diebolt, 912 S.W.2d at 304–05 (issue waived on
appeal because appellant failed to provide relevant legal authority or make
accurate references to the record).

Having rejected all of appellants’ arguments in
support of overturning the trial court’s sanctions award, we overrule
appellants’ third issue.

IV.      Additional
Findings of Fact and Conclusions of Law  

Appellants argue in their fourth issue that the trial
court erred in denying appellants’ request for additional findings of fact and
conclusions of law because “the Orders granting [Martin] relief involved
factually complicated situations in which there are two or more possible
grounds for recovery or defense existed [sic], which has placed an undue burden
upon Appellants in challenging the relief granted Mr. Rauscher in this appeal.” 
See Limbaugh v. Limbaugh, 71 S.W.3d 1, 7 (Tex. App.—Waco 2002, no pet.)
(“In factually complicated situations in which there are two or more possible
grounds for recovery or defense, an undue burden would be placed upon an
appellant [if the trial court fails to file more detailed conclusions of law].”)
(internal quotation omitted).

We cannot agree with appellant that the trial court’s
findings of fact and conclusions of law, which fill nine pages, force
appellants “to try to guess the reason or reasons the trial judge ruled against
[them].”  See id.  The trial court incorporated (1) each of its eight partial
summary judgment rulings; (2) detailed findings and conclusions regarding the
sanctionable conduct at issue in its previous sanctions order; and (3) findings
and conclusions regarding attorney’s fees.  We conclude on this record that the
trial court explained in sufficient detail the reasons for its rulings, and we overrule
appellants’ fourth issue.

CONCLUSION

We sustain appellants’ issue regarding their
entitlement to a jury trial on the issue of the amount of reasonable and
necessary attorney’s fees incurred by Martin in seeking declaratory relief.  We
overrule all appellants’ other issues on appeal.  We remand this case for a
jury trial on the issue of the amount of reasonable and necessary attorney’s
fees incurred by Martin in seeking declaratory relief, and affirm the trial
court’s judgment in all other respects.

                                                                                    

                                                            /s/                    William
J. Boyce

                                                                                    Justice

 

 

Panel consists of Chief Justice
Hedges and Justices Seymore and Boyce.

 









[1]
Todd and Asafi attended law school together; Todd works as a paralegal for
Asafi.  Todd graduated from law school but is not eligible to take the Texas
Bar Examination.  Todd has represented himself as a pro se litigant
before the trial court and on appeal.





[2]
Alosia executed a will in 2005 naming Todd as the sole beneficiary of her
estate.





[3]
Todd alleges in his First Supplemental Petition that Martin has “willfully and
maliciously interfered with [Todd’s] right to receive Alosia’s interest in the
accounts, as well as other property, without just cause or excuse” and become
“unjustly enriched by obtaining property, through wrongful acts, that rightly
belongs to [the estate and Todd].”  At the hearing on Martin’s motion for
summary judgment on Todd’s affirmative claims, Todd did not challenge the trial
court’s characterization of these statements as claims for unjust enrichment,
tortious interference with inheritance rights, and conversion.  





[4]
Martin also sought (1) a declaratory judgment that the purported power of
attorney executed by Alosia “was the result of undue influence and [Alosia] was
not of sound mind when the durable power of attorney was executed” and that
“any action taken by Asafi pursuant to the power of attorney is void;” (2)
rescission of the purported assignment; and (3) damages for intentional
infliction of emotional distress.  The trial court did not rule on the validity
of the durable power of attorney or the purported assignment.  The record
reflects that at least one of these additional claims was non-suited by
Martin.  The trial court’s post-trial final judgment states: “This is a final
judgment finally disposing of all parties and all claims and causes of actions
between all parties, and this judgment is appealable.  All other relief not
expressly granted in this Final Judgment is denied.”  Martin does not challenge
on appeal the trial court’s denial of relief for his additional claims.       





[5]
Martin’s summary judgment evidence included the relevant account agreements and
affidavits regarding the execution of those agreements and their effectiveness
on the date of Alosia’s death.  Aside from making various unsupported
evidentiary challenges discussed below, appellants do not argue on appeal, as
they did to the trial court, that Martin failed to meet his initial burden to
prove “to the satisfaction of the court” that the survivorship agreements at
issue were not revoked.  See Tex. Prob. Code Ann. § 456 (Vernon 2003)
(proof required to support application to adjudicate survivorship agreement
between spouses).    





[6]
Appellants state: “The evidence is uncontroverted that . . . specific forms . .
. needed to be completed to designate a person as a transfer on death
beneficiary. . . .  The evidence is uncontroverted that Alosia never completed any
of the required forms to make [Martin] the transfer on death beneficiary of her
Chevron stock.”  Martin’s summary judgment evidence includes a completed form
in which Alosia registers her account as “Alosia S. Rauscher TOD Martin J.
Rauscher” before the merger; appellants do not challenge this pre-merger
designation.  The forms identified by appellants are required when the
shareowner wishes to transfer stock to a new account or shareowner.  Again,
appellants do not cite any authority for the conclusion that it was necessary
for Alosia to submit these transfer forms to reaffirm her existing
transfer-on-death designation after the merger.      





[7]
Appellants recite this argument verbatim five times throughout their brief to
challenge evidence supporting each of the five motions for partial summary
judgment motions on Martin’s ownership of the Chevron stock, the “Vanguard
Accounts,” the Cohen & Steers, CGM, and Merger Fund accounts, the
Woodforest account, and the Fivepoint accounts.  





[8]
Appellants also make the same unsupported evidentiary challenges that were
overruled in Part I.B.  For the same reasons stated above, we overrule
appellants’ issue as it relates to these challenges.





[9]
Appellants also argue that “[t]his Court in Osorno v. Osorno, 76 S.W.3d
509 (Tex. App.—Houston [14th Dist.] 2002, no pet.) required that deposit slips
or bank records be produced when tracing bank accounts as separate property.” 
This Court stated in Osorno that conclusory testimony as to the separate
nature of presumptively community assets, without deposit slips, bank records,
or other evidence to trace the assets to separate property, cannot overcome the
community property presumption.  Osorno, 76 S.W.3d at 512.  Osorno is
inapplicable because Martin’s summary judgment motion was based on “other
evidence” tracing the account assets to his separate property.  





[10]
Martin’s only response to appellants’ argument is that appellants are not
entitled to relief because they failed on appeal to challenge the amount of
attorney’s fees awarded or the sufficiency of the evidence supporting the award
or explain how they were harmed by the failure to have the issue of the amount
of fees submitted to a jury.  The denial of a party’s constitutional right to
trial by jury constitutes reversible error.  See McDaniel v. Yarbrough,
898 S.W.2d 251, 253 (Tex. 1995); see also Wittie v. Skees, 786 S.W.2d
464, 465 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (timely and
appropriate jury demand entitles party to absolute right to a jury trial).  A
denied jury request is harmless error only if the record shows that no material
issues of fact exist and an instructed verdict would have been justified.  Halsell
v. Dehoyos, 810 S.W.2d 371, 372 (Tex. 1991).  We reject Martin’s argument
because the record reflects that appellants challenged the reasonableness and
necessity of Martin’s claimed attorney’s fees throughout the trial and
repeatedly insisted on their right to have a jury hear the evidence.  





[11]
Appellants also argue briefly that Martin “waived any sanctions” because he
“wait[ed] to move for sanctions at trial based on alleged pretrial conduct.” 
The record reveals that Martin filed a pre-trial motion for sanctions regarding
pre-trial conduct; he did not “wait[] to move for sanctions.”  We overrule appellants’
issue as it relates to this argument.





[12]
Appellants also argue that we should reverse the sanctions order because the
trial court “refused to state lesser sanctions considered.”  A trial court must
consider the imposition of lesser sanctions, such as the imposition of
attorney’s fees, for discovery abuse under Ruler 215 before imposing severe
sanctions, such as striking a party’s pleadings.  See Cire, 134 S.W.3d
at 839–40.  Appellants have not explained on appeal why such a rule applies in
this case.