# Court of Appeals
## Tenth Appellate District of Texas

10-23-00428-CV

In the Matter of the Marriage of Rebecca Christine Liardon and Ronald Alfred Liardon and In the Interest of J.A.L., a Child

On appeal from the
220th District Court of Bosque County, Texas
Judge Shaun D. Carpenter, presiding
Trial Court Cause No. CV22-254

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Ronald Alfred Liardon appeals from the trial court's final divorce decree, complaining in three issues of the division of property. We affirm.

### BACKGROUND

Ronald and Rebecca Liardon were married in 2006. Rebecca filed for divorce in 2022, seeking orders regarding their minor son, division of property, and reimbursement for funds expended by the community estate for the benefit of Ronald's separate estate, and reimbursement for funds expended by her separate estate for the benefit of the community. In the final divorce decree,

the trial court included the appropriate provisions regarding their son, divided the marital estate, and without specifically addressing Rebecca's request for reimbursement, denied all relief not expressly granted.

**CHARACTERIZATION OF PROPERTY**

In his first and second issues, Ronald contends the trial court abused its discretion by characterizing certain property as community property when part of it was his separate property and part of it belonged to his mother, Linda Liardon. The alleged mischaracterization, he contends, resulted in an unfair division of property.

## Standard of Review

We review a trial court's division of property under an abuse of discretion standard. *Kelly v. Kelly*, 634 S.W.3d 335, 346 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion. *Id.* We consider whether the trial court had sufficient information upon which to exercise its discretion and whether it erred in its application of that discretion. *Id.*

A party who seeks to assert the separate character of property must prove that character by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). Clear and convincing evidence is the measure or degree of proof

that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* § 101.007.

In a legal sufficiency review of a finding concerning the separate character of property, we review all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *Kelly*, 634 S.W.3d at 347. We credit evidence favoring the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must indulge every reasonable inference that would support the verdict. *Id.* at 822. As long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Kelly*, 634 S.W.3d at 347.

In reviewing the evidence for factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We determine whether, based on the entire record, a factfinder could reasonably form a firm belief or conviction that the allegations were proven. *Id.*

The factfinder is the only judge of testimonial weight. *See Eckhardt v. Eckhardt*, 695 S.W.3d 883, 888 (Tex. App.—Houston [1st Dist.] 2024, no pet.). When the testimony of witnesses is conflicting, we will not disturb the

credibility determinations made by the factfinder, and we presume that the factfinder resolved any conflicts in favor of the verdict. *Id.*

**Applicable Law**

A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. TEX. FAM. CODE ANN. § 7.001. Whether property is separate or community property is determined by the facts that, according to rules of law, give character to the property at its inception. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001); *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *See Kelly*, 634 S.W.3d at 349.

Community property consists of the property, other than separate property, acquired by either spouse during the marriage. TEX. FAM. CODE ANN. § 3.002. A spouse's separate property consists of (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. TEX. CONST. art. 16, § 15; TEX. FAM. CODE ANN. § 3.001.

We presume property possessed by either spouse during or on dissolution of the marriage is community property. TEX. FAM. CODE ANN. § 3.003(a). The burden of overcoming the community property presumption is on the party asserting otherwise. *See Kelly*, 634 S.W.3d at 348. The party contesting a community property designation must trace and clearly identify the property claimed to be separate. *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex. 1965). Tracing involves establishing the separate origin of the property through evidence showing how the spouse originally obtained possession of the property. *Boyd*, 131 S.W.3d at 612. Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Id*. As a general rule, mere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Id*. Any doubt as to the character of property should be resolved in favor of the community estate. *Id*.

However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails. *See Est. of Hanau v. Hanau*, 730 S.W.2d

663, 667 (Tex. 1987). When separate property has not been commingled or its identity as such can be traced, the statutory presumption is dispelled. *Moroch v. Collins*, 174 S.W.3d 849, 855 (Tex. App.—Dallas 2005, pet. denied). If the trial court mischaracterizes a spouse's separate property as community property and awards some of the property to the other spouse, then the trial court abuses its discretion and reversibly errs. *Kelly*, 634 S.W.3d at 348.

**Discussion**

The divorce decree does not identify any separate property owned by either party, or Linda Liardon, Ronald's mother. All property addressed in the decree is identified in a section entitled "Division of Marital Estate." We therefore imply findings that the assets were community property. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977) (per curiam) (holding the "estate" of the parties subject to division includes only the community property of the parties).

In his second issue, Ronald asserts that he possessed separate property in the form of bank accounts, his farming operation and associated equipment, and his 50% ownership in the cattle operation, along with its associated equipment. He contends his separate property was mischaracterized as community property, causing a substantial disparity in the resulting division

of the marital estate, making it manifestly unjust and unfair. Ronald repeatedly argues that the evidence does not support an inference that any of the property is community property. He appears to misconstrue the standard and fails to appreciate his burden to overcome the community property presumption.

The trial testimony is cryptic, and the exhibits are incomplete. The record shows that, since before the marriage, Ronald and his mother ran a cattle operation, and Ronald farmed on the property. Rebecca testified that the following items were acquired during the marriage: a planter, grain drill, combine, cotton stripper, John Deere 7220, dozer, shredder, plow, trailers, and grain cart. She considers those items to be community property. She testified that there were roughly the same number of cattle before they married as there are now. They currently have fifty cows and two bulls that she claims are community property.

Ronald testified that he purchased a flatbed trailer before the marriage. During the marriage, he traded a previously purchased cattle trailer for a different one of equal value. Also, he testified that he traded a disc plow for a different disc plow of equal value. He does not have any documents to support his testimony. This evidence did not adequately trace these assets back to

their origin and did not overcome the community property presumption regarding these items. *See Boyd*, 131 S.W.3d at 612.

Ronald testified that his mother owns half of the dozer and the John Deere 7220 but provided no documentation. He explained that he used USDA money to buy the tractor, but that money had been deposited in his farm account. Although he made a vague reference to "the partnership on the cattle with [his] mother," Ronald did not offer any testimony about the livestock. He did not testify as to the other items awarded to him as personal property that he now contends are his separate property used in the farming and cattle operations. Where a spouse owns a business, business equipment, furnishings or other items on hand at the time of the divorce are presumptively community property. *Hopf v. Hopf*, 841 S.W.2d 898, 900 (Tex. App.—Houston [14th Dist.] 1992, no writ). Ronald did not present sufficient evidence for the trial court to form a firm belief that the livestock and equipment used in the farming and cattle operations were separate property. *See* TEX. FAM. CODE ANN. § 3.003(b); *Kelly*, 634 S.W.3d at 349.

Rebecca testified that the two National Life Group accounts and the Sunflower Bank CD are community property. Ronald explained that the National Life Group accounts began as one policy and had been in existence for over thirty years, having been rolled over from one account to another. He

also testified that he added money to those accounts from 2006 through 2015, during the marriage. Thus, even assuming they were separate property, there was comingling of community and separate funds in the National Life Group accounts. *See Est. of Hanau*, 730 S.W.2d at 667. Additionally, Ronald produced no tracing evidence to show the origin of these accounts, or how much of the money in the accounts is separate or community funds. *See Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding husband's testimony insufficient to overcome the community presumption in the absence of deposit slips or bank records tracing the source of the funds). Therefore, Ronald did not overcome the presumption that the National Life group accounts were community property. *See Tarver*, 394 S.W.2d at 783.

Ronald did not agree that the Sunflower Bank CD is community property, stating that it was opened maybe forty years ago. However, he had no documentation showing the account's origin. Further, that CD had been at two different banks before moving it to the current Sunflower Bank location, none of which is documented. Ronald also testified that a money market account, which he described as a savings account, is his separate property, but he had no documentation to support the claim. He testified that he has not put any money in the money market account or the CD since they were married.

But his testimony seemed contradictory. He explained that the money market account was at Bank of America, but now "most of it" is in a bank in Cranfills Gap. When he moved it, he "upped the CD about 25 and deposited the rest in money market." There is no tracing evidence for either the Sunflower Bank CD or the money market account, and Ronald has not rebutted the community property presumption as to these two accounts. *See Osorno*, 76 S.W.3d at 512.

The record shows a checking account in Ronald's name, designated "Farm Account." This account is presumptively community property. *See* TEX. FAM. CODE ANN. § 3.003(a). Ronald asserts the farm account is separate property apparently because he has been a farmer since he was three, the farm is a business, the farm account is specifically for the farm, the farm's income was used to improve the farm, essentially no income is reported and taxed as it is all put toward capital improvements, and the farm has been in operation since before the marriage. The record includes two farm account statements, January 2021, showing a balance of $174,914.93, and May 2023, showing a balance of $96,495.47. Neither statement reflects any deposits. Ronald agreed with counsel that there is always money coming in and coming out. There is no explanation for the origin of the funds in the farm account and no showing that it is separate property. *See Tarver*, 394 S.W.2d at 783. Thus, Ronald did not overcome the presumption that the farm account is community property.

*See Boyd*, 131 S.W.3d at 612. Further, to the extent the account may reflect business income, any income earned during the marriage is presumed to be community property. *See In re Tyeskie*, 558 S.W.3d 719, 723 (Tex. App.—Texarkana 2018, pet. denied); *Hopf*, 841 S.W.2d at 900 (earnings during marriage from business that existed before the marriage and business accounts receivable were community property).

Ronald seems to complain that the trial court erred in categorizing the "cattle account" as community property. The trial court sent a letter to the parties asking Rebecca's attorney to draft a final judgment in accordance with rulings contained in the letter. Although a table labeled Exhibit 1, attached to the letter, lists the "FSSB CGAP Joint w/Linda Acct #420" in Ronald's column, that account is not listed in the final decree. The final decree awards to Ronald sums on deposit in accounts in his sole name, or from which he has the sole right to withdraw funds, or which are subject to his sole control. Thus, the trial court did not categorize the cattle account as community property or award it in the divorce decree.

Ronald did not discharge his burden to rebut the community presumption by clear and convincing evidence with regard to any of the property he claims as his separate property. *See* TEX. FAM. CODE ANN. § 3.003(b); *Boyd*, 131 S.W.3d at 612. Thus, the evidence presented is not such

that the trial court could reasonably have formed a firm belief or conviction that any of the items alleged to be Ronald's separate property are his separate property. *See* TEX. FAM. CODE ANN. § 101.007. The trial court did not abuse its discretion by its characterization of the parties' property. *See Kelly*, 634 S.W.3d at 346. We overrule Ronald's second issue.

In his first issue, Ronald asserts the trial court committed legal error in characterizing Linda Liardon's 50% ownership in certain equipment, the cattle, and the cattle account as community property, resulting in a divestiture of her ownership in her separate property. He argues this is an abuse of discretion requiring reversal for a new trial on the division of the marital estate.

We agree that assets belonging to a third party are not part of the marital estate and therefore not subject to division by the trial court. *Collins v. Collins*, 345 S.W.3d 644, 650-51 (Tex. App.—Dallas 2011, no pet.). Mischaracterization of a third party's property as a part of the community estate is error affecting the trial court's "just and right" division. *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied).

In this issue, Ronald appears to be attempting to assert Linda Liardon's claim to the property. Linda Liardon was not a party to these proceedings, and Ronald does not have standing to complain on her behalf. *See Paul v. Merrill*

*Lynch Trust Co. of Tex.*, 183 S.W.3d 805, 811-12 (Tex. App.—Waco 2005, no pet.). Any interest Linda Liardon may claim does not deprive the trial court of jurisdiction to divide between Ronald and Rebecca whatever interests they may have in the property. *K.B. v. K.B.*, 811 S.W.2d 634, 641 (Tex. App.—San Antonio 1991, writ denied). To the extent Ronald may be attempting to complain in this issue that inclusion of property allegedly owned by Linda Liardon led to an erroneous division of the community estate, he has not provided sufficient documentation or evidence tracing the cattle operation equipment or cattle back to its origin. *See Boyd*, 131 S.W.3d at 612. Ronald has not overcome the community property presumption regarding these items. *See Kelly*, 634 S.W.3d at 348. Contrary to Ronald's assertion, the divorce decree does not award the cattle account to either spouse. We overrule issue one.

### REBECCA'S REIMBURSEMENT CLAIMS

Ronald lists his third issue as a complaint regarding the trial court's disposition of Rebecca's claims for reimbursement. However, he included no argument or authority in support of this issue in the body of the brief. Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The failure

to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Taylor v. Meador*, 326 S.W.3d 682, 684 (Tex. App.—El Paso 2010, no pet.). Ronald waived his third issue because it is inadequately briefed. We therefore overrule Ronald's third issue.

## CONCLUSION

Ronald did not meet his burden to overcome the community property presumption or show the trial court abused its discretion. Accordingly, we affirm the trial court's judgment.

_____
STEVE SMITH
Justice

OPINION DELIVERED and FILED: May 29, 2025

Before Justice Smith,
     Justice Harris, and
     Senior Chief Justice Wright[1]
Affirm
CV06



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Texas.